**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SECURITIES AND EXCHANGE
COMMISSION,
                    *Plaintiff-Appellee,*

            and

THOMAS F. LENNON, as appointed
receiver for Alpha Telcom, Inc.;
an Oregon Corporation; American
Telecommunication Company,
Inc., a Nevada Corporation;
Strategic Partnership Alliance,
LLC.; a Nevada Limited Liability
Company; SPA Marketing, LLC, a
Nevada Limited Liability
Company,
                    *Receiver-Appellee,*

            v.

PRISCILLA ROSS; KEVIN M. RIMPLE;
BRUCE F. RUARK; DENNIS L.
BAUGHER; MICHAEL E. GIROUARD;
LANCE LIPOUFSKI; SAMIR K. GHOSH;
ROBERT TRIPODE; RICHARD WILSON;
HAROLD C. NORRIS; THOMAS O.
PARK; JOE BRANDENBURG; ERNEST
BUSTOS; THELL G. PRUITT,
                    *Intervenors-Appellants.*

Nos. 05-35541
      05-35542
      05-35544
      05-35545
      05-35546
      05-35547
      05-35552
      05-35554
      05-35555
      05-35559
      05-35577
      05-35578
      05-35580
      05-35663

D.C. No.
CV-01-01283-OMP

OPINION

Appeal from the United States District Court
for the District of Oregon
Owen M. Panner, Senior Judge, Presiding

Argued and Submitted
February 6, 2007—Portland, Oregon

13905

Filed October 15, 2007

Before: Dorothy W. Nelson, Andrew J. Kleinfeld, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

**COUNSEL**

Ernest Bustos, San Antonio, Texas, pro se, as the intervenor-appellant.

David R. Zaro, Allen Matkins Leck Gamble & Mallory LLP, Los Angeles, California, for the receiver-appellee.

Christopher Paik, Esq., Securities & Exchange Commission, Washington, DC, for the plaintiff-appellee.

**OPINION**

BYBEE, Circuit Judge:

Ernest Bustos and sixteen other Intervenor-Defendants (collectively, "Bustos") appeal the district court's order requiring them to disgorge commissions they received

through the sale of interests in pay phones being offered by Alpha Telcom, Inc. and related companies (collectively, "Alpha Telcom"). This disgorgement order issued in a summary proceeding ancillary to an enforcement action brought by the Securities and Exchange Commission ("SEC") against Alpha Telcom and its owner, Paul S. Rubera, alleging various securities law violations arising from the sale of these interests. *See SEC v. Rubera*, 350 F.3d 1084 (9th Cir. 2003). Bustos challenges the disgorgement order on several grounds, including lack of personal jurisdiction, improper venue, insufficiency of service of process, and due process violations arising from the district court's use of summary proceedings. He also appeals the district court's calculation of the amount of disgorgement. We hold that the district court lacked *in personam* jurisdiction over Bustos and, therefore, erred when it entered the order of disgorgement against him.

Because the theories advanced in the disgorgement action are novel, and the proceedings are complicated, we will recount the facts and proceedings in some detail.

## I.  FACTS AND PROCEEDINGS

Bustos worked as a sales agent for Alpha Telcom, selling investments styled as purchases of pay telephones and management services from Alpha Telcom and its affiliates. In fact, as detailed in our *Rubera* opinion, while Alpha Telcom's business plan was curiously anachronistic—selling service contracts on pay phones—its business model was timeless: the Ponzi scheme. *See Rubera*, 350 F.3d at 1087-89. As in all Ponzi schemes, expenses far exceeded revenues, and "returns" to investors were funded by monies obtained from more recent investors. On August 24, 2001, Alpha Telcom filed voluntary petitions for bankruptcy.

### A.  *The SEC Enforcement Action*

On August 27, 2001, the SEC commenced a civil enforcement action against Alpha Telcom for violations of the federal

securities laws. On the same day, the district court appointed a receiver ("Receiver") to manage the corporation and preserve its assets for eventual distribution to the injured investors. The Receiver's appointment was confirmed on September 6, 2001.

In the underlying enforcement action, the district court held that the "investment opportunity" offered by Alpha Telcom was actually a security for purposes of the Securities Act of 1933[1] ("the Act") and that Alpha Telcom had violated § 5 of the Act by failing to register the securities with the SEC prior to selling them in interstate commerce. *SEC v. Alpha Telcom, Inc.*, 187 F. Supp. 2d 1250, 1258 (D. Or. 2002). The district court granted equitable relief against Rubera, the sole owner of Alpha Telcom, in the form of a permanent injunction against future violations of the securities laws and disgorgement in the amount of $3,750,707.66, representing "gross wages, shareholder compensation, shareholder loans, and other payments to Rubera and his family." *Id.* at 1262-63. However, the court declined to impose civil penalties under § 20 of the Act, concluding that they were "not warranted" given that this offense was Rubera's first violation and "his conduct did not amount to fraud, deceit, manipulation, or the like." *Id.* at 1263. We affirmed the district court in all respects. *See SEC v. Rubera*, 350 F.3d 1084 (9th Cir. 2003).

B.   *The Disgorgement Motion and Subsequent Proceedings*

On December 23, 2003, approximately two weeks after we decided *Rubera*, the Receiver filed a motion to disgorge $21 million in commissions on the sales of these unregistered

---

[1] The district court applied the three-part test set forth in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). In *Howey*, the Supreme Court held that for purposes of the Act, a security was defined as "(1) an investment of money; (2) in a common enterprise; (3) with the expectation of profits to be derived from the efforts of others." *Alpha Telcom*, 187 F. Supp. 2d at 1258 (citing *Howey*, 328 U.S. at 298-99).

securities from Alpha Telcom's sales agents.[2] In its motion, which the SEC joined, the Receiver styled its requested relief as "[r]equiring all Agents to disgorge Commissions received for their unlawful sale of unregistered securities in violation of Sections 5(a) and 5(c) of the Securities Act of 1933 . . . ." Citing our decisions in *SEC v. Wencke*, 783 F.2d 829 (9th Cir. 1989), and *SEC v. Hardy*, 803 F.2d 1034 (9th Cir. 1986), the Receiver further requested the court to allow it to proceed "through summary proceedings," an approach he argued was permissible "in equity receivership cases such as this." The Receiver asserted that the district court had broad powers to order disgorgement of "ill-gotten gains" and that the commissions, which were paid "to compensate and reward the Agents for their illegal sale of unregistered securities to investors," were "in fact the ill-gotten gains received from these investors . . . ." According to the Receiver, "the Agents provided no benefit to Alpha other than to facilitate the process of luring in additional new investors." The Receiver asserted that it was beyond dispute that "the money used to pay the Commissions to the Agents were ill-gotten gains from the sales of unregistered securities to unsuspecting investors." Because "the Commissions were paid to [the Agents] specifically for their role in these illegal sales of the unregistered securities," the agents had "no legitimate claim to the Commissions."[3]

---

[2]The Receiver identified approximately 650 sales agents and commissions totaling approximately $39 million. Some number of these sales agents could not be located or had died, and the Receiver determined that it would be inefficient to pursue agents who had earned less than $25,000 in commissions. It appears that the total commissions earned by the remaining agents totaled approximately $21 million.

[3]The Receiver also argued that the commissions represented fraudulent transfers because the agents provided no value in exchange for the monies received as commissions. Having accepted the Receiver's unjust enrichment theory, the district court declined to address the fraudulent transfer theory, which it described as unpersuasive, given that the agents had actually provided value in exchange for those commissions. The Receiver does not pursue this theory on appeal.

Joining the Receiver's motion, the SEC argued that "it is well-established that District Courts may order disgorgement by *nonparties* in Commission enforcement actions." According to the SEC, Disgorgement was proper here because (1) the court had already held that the investments were unregistered securities and thus were sold in violation of § 5 of the Act, rendering any proceeds "ill-gotten gains"; (2) the Agents had "no legitimate claim to these funds, as there is no evidence that they provided services to [Alpha Telcom] in exchange for the commissions . . . ."; and (3) even if the Agents did "expend[ ] effort," they have no legitimate claim "because they offered and sold the securities in violation of the federal securities laws."

In support of its motion, the Receiver submitted detailed information about the financial condition of the Receivership Entities and of commissions paid out to each of the sales agents. On either December 24 or 31, 2003,[4] it sent a Notice of Hearing on the motion for disgorgement to "the interested parties in this action" by first-class mail. The notice stated that the hearing would be held in Portland, Oregon on February 18, 2004, and that any response to the motion had to be filed and served within eleven days of service of the notice. The district court entered an order permitting the agents to file responses to the motion by February 2, 2004.

On February 2, several of the agents, including Bustos and 10 other Appellants, preserving their jurisdictional objections, moved to intervene as of right as defendants in the action

---

[4]The Notice itself was dated December 24, but the Certificate of Service attached to the Notice is dated December 31. The Receiver appears to have mailed additional documents on December 30, 2003: The "Proof of Service" filed by the Receiver states that five documents were sent to the agents: a notice of the hearing on the Receiver's motion for disgorgement, the motion itself, two supporting declarations, and a request for judicial notice. In any event, as the district court noted, the Receiver did not even deign to send the documents by certified mail and could not conclusively establish whether all the agents had actually received the documents.

under FED. R. CIV. P. 24(a)(2), noting that, because the Receiver was attempting to have the district court "summarily adjudicate the Intervenors' personal liability," the agents had "a direct financial interest in this case" that could be adequately represented only by each named agent; they also requested an extension of time to respond. The Receiver objected to the agents' motion, arguing that there was "no legal basis" for their request to intervene in the underlying enforcement action. Moreover, because the agents had allegedly known of the Receiver's intent to disgorge commissions for over 18 months,[5] the Receiver argued that the motion was "nothing more than a delay tactic designed to hinder the Receiver's efforts to recover the ill-gotten gains received by these Agents."

On February 11, the district court granted the motion to intervene, stating that no formal answer was required and that the intervenors could "assert any defenses by motion or in their memoranda opposing the Receiver's motion . . . ." However, "[d]ue to the advanced stage of [the] case," the district court conditioned intervention "on Intervenor's agreement not to revisit issues already adjudicated." These issues presumably included the district court's prior findings that the investments sold by the agents were unregistered securities.[6]

Despite the district court's statement that no answer was required, the now Intervenor-Defendants filed a brief answer on February 18, 2004 and asserted several defenses, including lack of personal jurisdiction, improper venue, "insufficient process," statute of limitations, and laches.[7] They concurrently

---

[5]The Receiver asserted that it had sent demand letters to all of the agents requesting that they voluntarily disgorge their commissions in July and October 2002.

[6]The court granted 26 additional individuals permission to intervene on March 11, 2004. The six remaining Appellants belonged to this group.

[7]They also asserted four substantive defenses to the disgorgement that are not relevant to our disposition of this appeal.

filed Preliminary Objections to the Receiver's disgorgement motion setting forth the legal bases for their defenses. In March, they filed a lengthy opposition to the disgorgement motion, reiterating the procedural defenses raised in their Preliminary Objections and further objecting to the district court's use of summary proceedings; they also provided further arguments against the Receiver's disgorgement request, including challenges to the method of calculation.

## C.  *The Disgorgement Order*

The district court granted the Receiver's disgorgement motion on August 18, 2004, and resolved the major issues that Bustos raises on appeal as follows. *See In re Alpha Telcom*, 2004 WL 3142555 (D. Or. Aug. 18, 2004).

### 1.  Personal jurisdiction and venue

The district court concluded that it "necessarily ha[d] jurisdiction over matters pertaining to [the] Receivership, and the assets thereof." Moreover, the agents had entered into agreements with Alpha Telcom, headquartered in Oregon, and those agreements specified that Oregon law would govern any disputes. Finally, the court noted that the securities laws permitted nationwide service of process, and the agents' contacts with the United States alone were sufficient to support the exercise of personal jurisdiction over them (citing, inter alia, 15 U.S.C. § 77v(a)). The court also concluded that venue was proper because the agents were scattered across the country, and it was more efficient to try the case in one location.

### 2.  Summary procedures and lack of service of process

The district court rejected the agents' argument that they had not been properly served, holding that formal service was required only to institute an action. Because the Receiver's disgorgement motion was not an independent action but simply "part of the Receivership proceeding" that sought to "re-

cover funds the agents received from Alpha Telcom that they allegedly have no legitimate claim to possess," the agents were "nominal defendants" who were entitled only to receive notice of the motion and a reasonable opportunity to be heard.

The district court noted that the "more serious flaw" was the fact that the Receiver could not prove that any particular agent actually received notice of the motion because it had failed to send the notice by certified mail. This flaw, however, was remedied by the fact that the Receiver sent multiple mailings to the listed agents, that the court had required the Receiver to send "a follow-up mailing to the agents," the "rebuttable presumption that mail, properly addressed, has been delivered," and the fact that the agents appeared to be in regular contact with each other. Moreover, the court found, the "vast majority" of the agents appeared to have received actual notice of the motion, and presumably any agent who had not received actual notice could collaterally attack the disgorgement order if he or she could prove lack of actual notice.

### 3.   Unjust enrichment

The Receiver's theory of unjust enrichment depended on whether the agents had a "legitimate claim" to the commissions they received. The district court noted that the Receiver had not formally alleged any wrongdoing on the part of the agents and chided the Receiver for filling its papers with accusations of wrongdoing that were not "germane to the legal theories he advances." The court declined to hold that the commissions were analogous to disbursements in the typical gratuitous donee case, where a third party receives value for no consideration from a wrongdoer, and expressly rejected three theories put forth by the Receiver as to why the agents had no legitimate claim to the commissions: (1) that Alpha Telcom received no value for the agents' services because the company lost money on each sale, (2) that agents were willing participants in a Ponzi scheme, and (3) that the agents' services helped to perpetrate a fraud. Rather, the district court

found the agents had no legitimate claim on the commissions because "[t]he services provided by the agents were, in hindsight, illegal." They had sold unregistered securities, which is a strict liability offense. Because they "were paid for furnishing illegal services[, t]he law [would not] permit them to benefit from the sale of unregistered securities."[8]

### 4. Computation of disgorgement amount

Having decided that the agents would be liable for the funds, the district court detailed how it would handle claims by remaining agents who contested the amounts claimed by the Receiver and sought setoffs for expenses and taxes paid on the commissions. The court found that many of the agents had likely claimed personal expenses as business expenses on their tax returns, and therefore, citing its discretionary powers, established "a uniform setoff for expenses: 10 percent of the first $50,000 in commissions received by an agent, and 5 percent of all commissions over that amount." The court determined that it was not practicable—and was far too expensive—to require the Receiver to evaluate each agent's claimed expenses and rejected objections, noting that "this is equity, not rocket science." Finally, the district court refused to grant a setoff for income taxes paid on the commissions, noting that this was "a matter between the agents and the IRS (or state officials). The court will not interfere."

### D.   *Appellants' Response and Appeal*

The district court gave the agents 20 days to file an objection to the amount of disgorgement and then addressed each agent's individual objections in a detailed order dated February 1, 2005. The court subsequently entered a Judgment of Disgorgement on March 31, 2005, and issued a "Notice to Agents" on March 31, 2005, advising them of the proper

---

[8]The district court assumed for the purposes of the motion that the agents had acted in good faith.

method for filing an appeal and waiving the normal fee for filing a notice of appeal. The Appellants timely appealed.

On appeal, Bustos reiterates most of the objections made to the district court, and these center on two sets of issues. The first of these involves due process violations arising from the district court's lack of personal jurisdiction, the Receiver's failure to properly serve him with a summons and complaint, and the use of summary proceedings to adjudicate the disgorgement motion. The second involves various contentions that the district court abused its discretion in granting the motion for disgorgement and calculating the amount to be disgorged. Because we hold that Bustos's due process rights were violated by the proceedings below, we address only the first set of issues in this appeal. We begin with a brief review of the principles of personal jurisdiction and the relationship between jurisdiction and service of process.

## II.   JURISDICTION AND SERVICE OF PROCESS

*In personam* jurisdiction, simply stated, is the power of a court to enter judgment against a person. *In rem* jurisdiction is the court's power over property. Before a court may exercise the state's coercive authority over a person or property, some statute must authorize the act. *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1313-14 (9th Cir. 1985). For state courts, generally a state long-arm statute supplies all the authority that state courts require. By contrast, there is no general federal long-arm statute, so federal courts must look either to the long-arm statutes of the state in which the court sits, FED. R. CIV. P. 4(k)(1)(A), or to specific federal statutes, FED. R. CIV. P. 4(k)(1)(B), (C), (D) to authorize the exercise of jurisdiction. Since *Pennoyer v. Neff*, 95 U.S. 714, 733-34 (1877), the courts' ability to exercise personal jurisdiction has been constrained by the Due Process Clauses of the Fifth and Fourteenth Amendments. The requirement that a court have personal jurisdiction "represents a restriction on judicial power not as a matter of sovereignty, but as a matter of indi-

vidual liberty." *Ins. Corp. of Ireland, Ltd v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

We have stated that "a court may exercise personal jurisdiction over a defendant consistent with due process only if he or she has 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice.' " *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940))). We have set forth a three-part test, derived from the Due Process Clause, that examines the defendant's purposeful conduct towards the forum, the relation between his conduct and the cause of action asserted against him, and the reasonableness of the exercise of jurisdiction. *See id.* at 1205-06; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

The familiar "minimum contacts" test, coupled with statutory authorization, provides a *basis* for an exercise of jurisdiction, but "[s]ervice of process is the *mechanism* by which the court [actually] acquires" the power to enforce a judgment against the defendant's person or property. *United States v. 2,164 Watches, More or Less Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d 767, 771 (9th Cir. 2004) (emphasis added). In other words, service of process is the means by which a court asserts its jurisdiction over the person. *See Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) ("A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with FED. R. CIV. P. 4."); FED. R. CIV. P. 4(k) (stating that "[s]ervice of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant"). Service of process has its own due process component, and must be "notice reasonably calculated . . . to apprise interested

parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Without a proper basis for jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process. *See Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992); *see also Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("[B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant."). A judgment entered without jurisdiction over the defendant is void.

With these principles in mind, we turn to the bases for jurisdiction asserted by the Receiver.

## III.   JURISDICTION IN SECURITIES RECEIVERSHIP ACTIONS

Bustos argues that the district court violated his due process rights by exercising personal jurisdiction over him despite the failure of the Receiver to name him in the complaint.[9] In response, the Receiver asserts that the district court's exercise of jurisdiction was proper for three reasons: (1) the Securities Act provides for nationwide service of process, and Bustos

---

[9]We note that the Receiver made no attempt to assert *in rem* jurisdiction over any property belonging to Bustos. Exercising *in rem* jurisdiction would have served to give notice to Bustos, but it would not have given the court *in personam* jurisdiction over him. *See Shaffer v. Heitner*, 433 U.S. 186 (1977).

had the requisite minimum contacts with the United States; (2) summary proceedings—moving for disgorgement against Bustos without serving him with a summons and complaint—were proper in the context of a federal receivership proceeding; and (3) Bustos consented to the court's jurisdiction when he intervened as of right under Rule 24(a)(2). We address each argument in turn.[10]

A.  *Jurisdiction in Claims Arising Under the Securities Act of 1933*

  1.  Claims against Securities Act violators

[1] The Receiver's first argument is that the district court had jurisdiction pursuant to the Securities Act of 1933 ("Securities Act"). Section 12 of the Securities Act, 15 U.S.C. § 77l, creates a private right of action for persons injured through the sale of unregistered securities. Section 22 of the Act provides that "process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found." 15 U.S.C. § 77v(a).

[2] The Receiver argues that § 22 is a nationwide service-of-process provision that authorizes the district court to exercise jurisdiction nationwide over any person who has minimum contacts with the United States. We agree that § 22 provides for nationwide service of process. The service of process language of § 22 tracks almost word-for-word that of the analogous provision in § 27 of the Securities and Exchange Act. *Compare* 15 U.S.C. § 77v(a) (§ 22 of the Act) *with* 15 U.S.C. § 78aa (§ 27 of the Act). In *Sec. Investor Prot.*

---

[10]"The jurisdictional limits to the district court's power in equity receivership proceedings are issues of law, reviewed *de novo*." *SEC v. Am. Capital Invs.*, 98 F.3d 1133, 1142 (9th Cir. 1996). We also review de novo due process challenges arising from claims that the district court lacked jurisdiction to enter an order in a federal equity receivership proceeding. *Id.* at 1146.

*Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985), we held that § 27 gave the district court the power to exercise personal jurisdiction over any party with minimum contacts with the United States and that the exercise of such jurisdiction comported with the principles of due process. *Id.* at 1315-16. Given the near identity in the language between these two provisions, we agree with the Receiver that, by empowering the district court to serve process nationwide, § 22 of the Securities Act permits district courts to obtain personal jurisdiction over parties who are properly served.[11]

[3] That the district court could have obtained jurisdiction over Bustos tells us nothing about whether it actually did so. The Receiver would apparently have us conclude that the *ability* to obtain jurisdiction coupled with actual notice of an *intent* to exercise jurisdiction gives birth to actual *in personam* jurisdiction over any interested party, whether or not that party has been properly served. Nothing in our jurisprudence supports such a remarkable extension of judicial power. The power to exercise jurisdiction nationwide is not self-executing. Mere contacts with the jurisdiction, even when coupled with some kind of actual notice, are not sufficient to invest the district court with *in personam* jurisdiction over a party-in-interest. As we discussed in the previous section, in order for the court to assert personal jurisdiction over a party-in-interest, the party must be properly served. *See* Fed. R. Civ. P. 4(k). Bustos was not so served, and the district court's power over him remained nothing more than a potentiality.

---

[11]As in *Vigman*, the question of whether the court can exercise personal jurisdiction over a party is distinct from the question of whether venue will properly lie in the court exercising jurisdiction. *See Vigman*, 764 F.2d at 1317-18. Section 22 of the Act provides that venue for a securities action under § 12 lies "in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein." 15 U.S.C. § 77v(a). Bustos has challenged venue in the District of Oregon. Because of our disposition on jurisdictional grounds, we do not reach this question.

It is true that we have described the service requirements of Rule 4 as "a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint," *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (discussing requirements for perfecting service against a corporation under FED. R. CIV. P. 4(d)(3)), but such liberal construction would be quite inappropriate in the circumstances of this case. First, we have generally held that "neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4." *Benny*, 799 F.2d at 492; *Direct Mail*, 840 F.2d at 688 (stating that only "substantial compliance with Rule 4" will provide personal jurisdiction over the defendant). Given the complete absence of any effort to serve Bustos with a summons or a complaint, the Receiver cannot claim substantial compliance with Rule 4. The Receiver's failure even to attempt to comply with Rule 4 is no "minor defect," *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984), that can be remedied by actual notice.

**[4]** More importantly, the difficulty here runs deeper than mere insufficient service of process. The Receiver never filed a complaint and never named Bustos as a party. In other words, the Receiver never commenced an action against Bustos, *see* FED. R. CIV. P. 3; it simply named Bustos in a motion for the disgorgement of allegedly ill-gotten gains earned through the sale of unregistered securities. *See In re Alpha Telcom*, 2004 WL 3142555, at *1 (holding that a formal summons and complaint were unnecessary because "[t]he motion before the court is not an independent action"). Prior to Bustos's intervention in the action, the Receiver apparently believed that he need not even obtain jurisdiction over Bustos. When Bustos sought leave to intervene in the disgorgement action, the Receiver took the position that Bustos's involvement in the action was unnecessary because Bustos could raise whatever objections he had on appeal. In other words, at every stage of the proceedings, the Receiver fought to deprive

Bustos of any opportunity to participate as a party. We will not now permit the Receiver to claim that actual notice received by Bustos cured the jurisdictional defects that the Receiver himself created by failing to name Bustos in a complaint and effect service of that complaint and a summons upon him. In sum, although § 22 of the Securities Act authorized the district court to exercise *in personam* jurisdiction over Bustos, the Receiver failed to take steps consistent with the Due Process Clause or Rule 4 to perfect the court's potential jurisdiction. Section 22 does not supply the personal jurisdiction needed to support the judgment.

2.   Nominal defendants and summary proceedings

The Receiver also argues (and the district court concluded) that Bustos was wrongly in possession of receivership assets and that Bustos was a nominal defendant or constructive trustee and was, therefore, subject to disgorgement in a summary proceeding.[12] We address each of these arguments in turn.

a.   *The nominal defendant designation*

**[5]** We have recognized a truncated form of process vis-à-vis "a non-party depository as a nominal defendant to effect full relief in the marshaling of assets that are the fruit of the underlying fraud." *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998). A nominal defendant is not a real party in interest because he "has no legitimate claim to the disputed property." *Id.* at 676; *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991) (stating that a nominal defendant "holds the subject matter of

---

[12]On appeal, the Receiver does not expressly argue that Bustos is a nominal defendant, but he did make, and the district court accepted, this characterization of Bustos's status below. Moreover, on appeal, the Receiver continues to argue that Bustos has no legitimate claim to the allegedly ill-gotten gains, precisely the theory central to his attempt to apply the nominal defendant designation to Bustos in the proceedings below.

the litigation in a subordinate or possessory capacity as to which there is no dispute" and is not a real party in interest because "he has no interest in the subject matter litigated" (internal quotation marks omitted)). Although the paradigmatic example of a nominal defendant is "a bank or trustee [that] has only a custodial claim to the property," *Colello*, 139 F.3d at 677, the term is broad enough to encompass persons who are in possession of funds to which they have no rightful claim, such as money that has been fraudulently transferred by the defendant in the underlying securities enforcement action. *See id.* at 675; *SEC v. Hickey*, 322 F.3d 1123, 1130-32 (9th Cir. 2003) (upholding the district court's exercise of jurisdiction over a corporation nominally owned by the defendant's mother and into which the defendant had channeled proceeds of his securities law violations); *SEC v. Wencke*, 783 F.2d 829, 838 (9th Cir. 1986) (holding that the district court had jurisdiction over the assets of a corporation into which the defendant in the underlying enforcement action had funneled proceeds of his securities law violations); *see also Cherif*, 933 F.2d at 414.

[6] Bustos, however, falls into none of these categories. The Receiver has not established that Bustos holds any funds in trust for the defendant in the underlying action, Rubera, or that he received fraudulent transfers from the receivership entity, Alpha Telcom; there is no evidence that he was a mere puppet holding an account into which Alpha Telcom funneled its fraudulent earnings. Indeed, as the district court correctly perceived, Bustos appears to be no different from any other employee or vendor: he received compensation in return for services rendered. As such, he has presumptive title to those commissions, and unless the Receiver can prove otherwise, it is likely that the Receiver can disgorge those commissions only by showing that Bustos has himself violated the securities laws.

The Receiver argues that Bustos is like the nominal defendants in *Hickey*, *Colello*, and *Wencke*, because the commis-

sions he earned are "ill-gotten gains" to which he has "no
independent legitimate claim." This argument borders on
sophistry. It is one thing to argue that a custodian or trustee
has no legitimate claim to receivership assets improperly or
fraudulently conveyed to her; it is quite another to assert that
Bustos has no legitimate claim to commissions earned for ser-
vices rendered because Bustos himself has violated the securi-
ties laws. The former requires only an adjudication of
ownership; the latter, a determination that a non-party has vio-
lated the law. That a court may afford relief by ordering dis-
gorgement in both cases does not mean that the parties
required to disgorge are entitled to the same amount of due
process. A mere custodian is generally entitled simply to
notice and an opportunity to be heard; a party alleged to have
violated the Securities Act must be treated as any other defen-
dant and afforded process of law.

[7] The district court noted the inconsistency in the Receiv-
er's position and criticized the Receiver for referring to Bus-
tos's wrongdoing while simultaneously naming him a
nominal defendant. The district court concluded, however,
that those allegations were not germane to the Receiver's
claims. We respectfully disagree. The claim ultimately
accepted by the district court—unjust enrichment—turns on
Bustos's own violations of the securities laws. As the district
court concluded, Bustos's commissions could be deemed ill-
gotten gains only because the services he provided—the sale
of the pay phone interests—were, "in hindsight, illegal." The
Receiver's equivocation as to Bustos's status is both telling
and fatal to his claim. The Receiver sought to name Bustos as
a nominal defendant "while at the same time implying
strongly that [he] is a violator of the securities laws." *Cherif*,
933 F.2d at 415. But nothing in the underlying action estab-
lishes that Bustos has violated the securities law. He was not
a party to that action and, so far as we can tell, had no reason
to know that his own activities in connection with Alpha Tel-
com were in question. We do not believe that the Constitution
permits the Receiver to use the nominal defendant designation

to deprive one whose only plausible basis for liability is a violation of the securities laws of either his right to full and formal service of process or his right to fully litigate the question of his own liability under the securities laws.

### b.    *Summary proceedings in securities actions*

The Receiver also relies on *Wencke* for the related proposition that, where there has already been an underlying securities action, a district court may permit the receiver to obtain relief through summary proceedings ancillary to the main action. *See Wencke*, 783 F.2d 829. In other words, the Receiver argues that where a securities proceeding has established liability, a receiver may simply file a motion for disgorgement in the underlying action against non-parties who also may have violated the securities laws to effect relief. Although *Wencke* provides some support for the Receiver's claim, ultimately we think it is distinguishable.

*Wencke* arose out of summary proceedings ancillary to an SEC enforcement action. The receiver alleged that the defendant in the underlying action, one Walter Wencke, had funneled the proceeds from his securities violations involving certain corporations into the Ramapo Corporation, in which Wencke held a 60-percent stake. The receiver filed an application for disgorgement against the Ramapo shareholders, including deLusignan, a minority shareholder who held 25 percent of the stock, and Ramapo, seeking to disgorge the shares from the former and the charter from the latter.[13] *Wencke*, 783 F.2d at 832. Eventually, the receiver gained possession of 75 percent of Ramapo's shares but continued to

---

[13]Meanwhile, the receiver also filed a complaint directly against deLusignan, the Hansa Trust (the Wencke-family trust in which Wencke held his 60-percent stake), and Ramapo for disgorgement of the shares and the establishment of a constructive trust over their holdings. The receiver later removed Ramapo as a defendant from this action, and it appears that no final judgment was entered. *See Wencke*, 783 F.2d at 832.

seek disgorgement of Ramapo's assets and of deLusignan's shares. *Id*. at 832 & n.2. Ultimately, the district court deemed Ramapo a constructive trustee for the benefit of the defrauded shareholders of the other corporations and ordered Ramapo, not deLusignan, to disgorge its assets. *Id*. at 833. This order, although not directed at deLusignan, had the effect of destroying the value of deLusignan's interest in Ramapo. He appealed, contesting the use of summary proceedings and arguing that the court did not have jurisdiction over him.

We rejected the shareholder's appeal. First, we noted that we had previously approved the use of summary proceedings in "adjudicating in summary post-judgment proceedings the claims of nonparties to property claimed by securities receivers." *Id*. at 836. Second, we noted that the district court's disgorgement order was directed only at Ramapo, not at deLusignan, and that deLusignan could still bring an action asserting his rights as a minority shareholder. *Id*. at 839 n.10. Third, we emphasized that because deLusignan had received actual notice, participated in extensive discovery, had been deposed, and was permitted to file briefs with the court, the use of summary proceedings did not violate his due process rights. *Id*. at 836-37. Finally, we noted that it was not necessary to the entry of the disgorgement order against the corporation to decide any issues or claims deLusignan might have had based on fraud or breach of contract by Wencke. *Id*. at 839 n.10.

*Wencke* differs from the instant case in several ways. First, and most importantly, because the disgorgement order was ultimately entered only against Ramapo Corporation, the district court did not need to obtain jurisdiction over deLusignan.[14] DeLusignan's objections were simply irrelevant to the ques-

[14]The receiver held 75 percent of Ramapo's shares by the time of disgorgement, and it appears that Ramapo either waived any jurisdictional objection or consented to the district court's exercise of personal jurisdiction over it.

tion whether Ramapo's assets should be disgorged, and as we pointed out, his relief, if any, would come in the form of a minority shareholder suit because deLusignan's injury was nothing more than the devaluation of his shares.

Second, as in the nominal defendant cases noted earlier, the receiver in *Wencke* alleged no wrongdoing against either Ramapo or deLusignan; the only claim to the funds was that Wencke had funneled the proceeds of his wrongdoing into the corporation. *Id.* at 832-33. Consistent with this allegation, the district court declared Ramapo a constructive trustee for the benefit of the defrauded investors. *Id.* at 833. In other words, the district court in *Wencke* was simply exercising its authority "to decide the legitimacy of ownership claims made by non-parties to assets alleged to be proceeds from [the actual defendant's] securities laws violations." *Cherif*, 933 F.2d at 414 n.11 (discussing *Wencke*, 783 F.2d 829). The use of summary proceedings in such cases is unremarkable because the purpose is simply to "obtain equitable relief from a non-party *against whom no wrongdoing is alleged*" and can succeed only "if it is established that the non-party possesses illegally obtained profits but *has no legitimate claim to them*." *Id.* (emphasis added).

Despite the Receiver's attempts to characterize it as such, this case does not involve Bustos's "claim[ ] . . . to [receivership] property claimed by" the Receiver. *Wencke*, 783 F.2d at 836. Rather, the case arises out of the Receiver's claims against Bustos for his alleged sale of unregistered securities. As we stated above, because the Receiver's disgorgement claim turns on Bustos's own violation of the securities laws, the Receiver cannot treat Bustos as a nominal defendant, nor can the Receiver plausibly claim that Bustos is a constructive trustee on behalf of Alpha Telcom or the defrauded investors. In other words, this is not a case involving the mere determination of who is entitled to possession of the funds where the minimal notice requirements of *Mullane* would suffice. Rather, the Receiver had to obtain the full *in personam* juris-

diction that would permit adjudication of Bustos's substantive liability.

Third, Bustos did not receive all of the benefits of being formally served with process and joined as a defendant in the underlying action. As a condition for intervention, the district court required him to waive any argument regarding whether the pay phone investments constituted securities and whether their sale violated § 12 of the Securities Act. Given the district court's ultimate conclusion that Bustos had to disgorge his commissions because he had unlawfully sold unregistered securities, this use of summary proceedings improperly deprived him of the opportunity to fully litigate the question of his liability.

[8] In sum, given that the Receiver alleged that Bustos himself had violated the securities laws—and this is both the central allegation of the Receiver's disgorgement motion and the basis of the district court's order—the Receiver could not style Bustos as a nominal defendant or employ summary proceedings against him. The Receiver—and the SEC, to the extent it is involved—had to decide whether Bustos merely had no right to the funds because he was an empty vessel into which the true wrongdoers funneled their proceeds or because he had violated the securities laws. He has chosen the latter (and given the district court's skepticism of the fraudulent conveyance claim, the Receiver likely had no other option). Bustos is thus, as the Receiver admitted below, the real party-in-interest. The Receiver therefore had to proceed against Bustos as a plaintiff would proceed against any defendant potentially liable under § 12 of the Securities Act, "appris[ing him] of the nature of the allegations against him and [permitting him to] make use of the possible defenses available to him under the securities laws."[15] *Cherif*, 933 F.2d at 415.

---

[15]For example, had the Receiver brought an action directly against Bustos, he might have challenged the Receiver's standing to bring a § 12 action, argued that the Receiver's claim was barred by the statute of limitations or by laches, or, as he attempted to do here, challenged the Receiver's action on jurisdiction and venue grounds.

Because the Receiver did not so proceed, he failed to obtain *in personam* jurisdiction over Bustos under the Securities Act.

B.  *Jurisdiction and Service of Process in Receivership Actions*

The Receiver also argues that, independent of the Securities Act, formal service of process was not required here because federal receivers have broad equitable powers and, pursuant to those powers, they can use summary proceedings to recover from third parties. *See Hardy*, 803 F.2d 1034; *United States v. Arizona Fuels Corp.*, 739 F.2d 455 (9th Cir. 1984); *SEC v. Universal Fin.*, 760 F.2d 1034 (9th Cir. 1985) (per curiam). According to the Receiver, our cases—which rely on 28 U.S.C. §§ 754 and 1692—hold that actual notice with the opportunity to "file responsive pleadings" satisfies the requirements of due process. The Receiver insists that these cases justify the use of summary proceedings here as well, because obtaining jurisdiction over each sales agent would unreasonably deplete the assets of the receivership and diminish returns to the investors. *See Hardy*, 803 F.2d at 1040 (noting efficiency as one rationale supporting the use of summary proceedings).

Congress has authorized federal receivers to exercise broad powers in administering, retrieving, and disposing of assets belonging to the receivership. In 28 U.S.C. § 754, Congress has granted receivers authority to protect receivership "property, real, personal or mixed, situated in different districts." Once appointed, in order to preserve his claims, a receiver is to "file copies of the complaint and [the] order of appointment in the district court for each district in which the property is located." By doing so, a receiver obtains "complete jurisdiction and control" over receivership property in any district. *Id*. However, failure to file in any given district within ten days of the receiver's appointment generally "divest[s] the receiver of jurisdiction and control over all such property in that district." *Id*. Section 1692 compliments § 754. It provides that

when "a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district." 28 U.S.C. § 1692.

**[9]** Some courts have held that the interplay between § 754 and § 1692 operates analogously to statutes that confer the power to effect service of process nationwide: Just as those statutes permit the district court to exercise nationwide juris-diction, §§ 754 and 1692 permit the district court to obtain jurisdiction in a district where receivership property is located so long as the receiver has properly filed pursuant to § 754. *See, e.g.*, *SEC v. Bilzerian*, 378 F.3d 1100 (D.C. Cir. 2004); *SEC v. Vision Comm'ns, Inc.*, 74 F.3d 287 (D.C. Cir. 1996); *Haile v. Henderson Nat'l Bank*, 657 F.2d 816 (6th Cir. 1981). We agree with the D.C. and Sixth Circuits that § 1692 extends "the territorial jurisdiction of the appointing court . . . to any district of the United States where property believed to be that of the receivership estate is found, provided that the proper documents have been filed in each such district as required by § 754." *Bilzerian*, 378 F.3d at 1103-05; *accord Haile*, 657 F.2d at 823. As with the nationwide service provision in the Securities Act, where a party has been properly served by the Receiver, the Due Process Clause is satisfied because the party has minimum contacts with the United States as a whole. *See Omni Capital Int'l*, 484 U.S. at 104-06; *see also Haile*, 657 F.2d at 824 (noting that "[i]n an action where ser-vice of process is effected pursuant to a federal statute which provides for nationwide service of process, the strictures of *International Shoe* do not apply").

The cases upon which the Receiver relies presume that the district court has jurisdiction by virtue of the district court's investment of ownership and/or control of the receivership entity in the receiver or by virtue of the receiver's filing in compliance with § 754. For example, in *SEC v. Hardy*, 803 F.2d 1034, non-party investors challenged the receiver's administration of receivership assets, claiming that the use of

summary proceedings was inappropriate vis-à-vis the investors, because it deprived them of due process. *Id.* at 1040. We rejected this argument, noting that the district court had the authority to employ summary proceedings "to determine appropriate relief in equity receiverships" where multiple creditors laid claim to receivership assets. *Id.*; *see also SEC v. Universal Financial*, 760 F.2d 1034, 1038-39 (9th Cir. 1985) (per curiam) (in an earlier piece of litigation in the *Hardy* case, holding that the district court's exercise of summary jurisdiction over claims to receivership assets presented by non-party investors was proper).

In *SEC v. Am. Capital Invs., Inc.*, 98 F.3d 1133 (9th Cir. 1996), we rejected jurisdictional challenges by non-party partners to the forced sale of certain partnership assets, noting that the receiver had obtained jurisdiction over the assets pursuant to its § 754 filing, *id.* at 1142-43, and that its disposition of the property was within the receiver's powers to exercise the "complete control" vested in it by that section. *Id.* at 1144. We held that the receiver's disposition of the property pursuant to this jurisdiction did not violate any rights of the partners because they had both actual notice and an opportunity to be heard. *Id.*; *see also In re San Vicente Med. Partners*, 962 F.2d 1402 (9th Cir. 1992).

**[10]** It should be obvious that these cases provide no basis for the Receiver's attempted use of summary proceedings against Bustos. Even assuming the Receiver could overcome the preliminary difficulty of establishing that Bustos's earned commissions are receivership assets, he has not given any evidence that the proceeds of these commissions are located in the District of Oregon, or that he has attempted to establish control over out-of-district assets pursuant to § 754. Absent some evidence that he has obtained jurisdiction over these assets, these cases cannot justify his use of summary proceedings. Furthermore, given his apparent failure to comply with § 754, it follows, *a fortiori*, that he could not have served process pursuant to § 1692. *See Vision Commc'ns, Inc.*, 74 F.3d

at 289, 291 (expressly rejecting the exercise of *in personam* jurisdiction over a party in a district outside the district of appointment because the receiver had failed to comply with the filing requirements of § 754). In sum, the Receiver failed to obtain *in rem* jurisdiction over any assets or *in personam* jurisdiction over Bustos himself, and without such jurisdiction, the use of summary proceedings was improper.

We should note that although receivers usually obtain jurisdiction in the manner described above, in one case we held that strict compliance with § 754 was not necessary even where the property was located outside the district of appointment. However, we excused the failure to file under § 754 because an independent basis for the district court's jurisdiction over the objecting party already existed. In *United States v. Arizona Fuels Corp.*, 739 F.2d 455 (9th Cir. 1984), the receiver appointed to manage the assets of Arizona Fuels moved for an order to show cause regarding certain assets claimed by the receiver that were in the possession of Tenneco, one of Arizona Fuels' suppliers. After Arizona Fuels was placed into receivership, Tenneco had attempted to use advance payments received from Arizona Fuels to offset pre-receivership deficiencies. The receiver claimed that Tenneco held those funds on behalf of Arizona Fuels against future deliveries, and as such, upon appointment of the receiver, they became receivership property. *Id*. at 458. The district court applied the rule barring the use of receivership assets to set off pre-receivership debts and, determining that the receiver was entitled to possession of the funds, ordered Tenneco to disgorge the funds. On appeal, Tenneco argued that the district court had erroneously ordered disgorgement after summary proceedings because, as a non-party, Tenneco was entitled to full plenary proceedings "with all the procedural trimmings" (including formal service of process). *Id*. Tenneco also argued that the receiver lacked jurisdiction over the funds because it did not comply with the filing requirements of 28 U.S.C. § 754. *Id*. at 458.

We rejected these arguments. First, we reasoned that the use of summary proceedings against a non-party could be proper "where the third person is made a party to the suit or where the third person becomes sufficiently involved in the receivership action, for example by intervening." *Id*. at 459. Tenneco had participated in the receivership proceedings from their inception: it was specifically named in and served with the receiver's order of appointment and counsel had appeared on its behalf at various hearings. *Id*. Because Tenneco had "ample opportunity" from the outset to participate in the proceedings and to contest the receiver's claims, the use of summary procedures did not violate due process.

More importantly, however, we held that through its active participation, Tenneco had submitted to the *in personam* jurisdiction of the district court. Thus, even though Tenneco claimed that it held the disputed proceeds in Houston, Texas, the failure of the receiver, who was appointed by the District of Arizona, to file in that district pursuant to § 754 did not divest the district court of the jurisdiction it already exercised over Tenneco itself. In this context, compliance with § 754 served no purpose other than to provide notice. Since Tenneco had received actual notice and had participated in the proceedings, it had no due process claim.

We think that *Arizona Fuels* does not govern this case. Nothing in the record suggests that the district court ever obtained *in personam* jurisdiction over Bustos. He was not named as a party to the underlying proceedings, and although he intervened, as we discuss in more detail below, that intervention did not constitute consent to the jurisdiction of the district court. Moreover, the receiver in *Arizona Fuels* was simply attempting to recover receivership assets—there was no allegation that the legitimacy of Tenneco's claim to the assets depended on its liability for some illegal activity. The Receiver in our case is alleging that Bustos himself violated the Securities Act. Bustos thus does not fall within this exception to the filing requirements of § 754.

C. *Intervention of Right as Consent to Jurisdiction*

The Receiver has one remaining jurisdictional argument that merits close attention. Bustos responded to notice of the Receiver's disgorgement motion by filing a motion to intervene as of right under FED. R. CIV. P. 24(a)(2). In his intervention motion, Bustos made clear that he contested the court's exercise of personal jurisdiction, the sufficiency of process he had received, and the propriety of venue in the District of Oregon. He filed similar objections in the first responsive pleading (his answer) filed after the court granted his motion to intervene. Nevertheless, the Receiver argues that by intervening Bustos consented to the jurisdiction of the district court. Although there is some support for the Receiver's view, upon careful consideration of the framework governing intervention, we decline to adopt a per-se rule that an intervenor consents to the court's personal jurisdiction. We hold that Bustos did not consent to the jurisdiction of the district court when he intervened.

Few courts have directly addressed whether a non-party who intervenes in ongoing proceedings pursuant to Rule 24(a)(2) can raise personal jurisdiction objections in conjunction with a motion to intervene. However, those that have addressed this question have generally concluded that a party who intervenes, consents, as a matter of law, to the jurisdiction of the court permitting the intervention. *See In re Ford Motor Co.*, 471 F.3d 1233 (11th Cir. 2006); *County Sec. Agency v. Ohio Dept. of Commerce*, 296 F.3d 477 (6th Cir. 2002); *Pharm. Research & Mfrs. v. Thompson*, 259 F. Supp. 2d 39 (D.D.C. 2003); *City of Santa Clara v. Kleppe*, 428 F. Supp. 315, 317 (N.D. Cal. 1976). *Wright and Miller* concurs in this view: "[T]he intervenor submits himself to the personal jurisdiction of the court by seeking to intervene in the action and cannot move to dismiss on that ground." 7C WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE, CIVIL 3D § 1920, at 612 (3d ed. 2007) (citing *Kleppe*, 428 F. Supp. 315).

These courts, and even *Wright and Miller*, devote little space to analyzing this issue, but the conclusion derives from the principle that a party cannot simultaneously seek affirmative relief from a court and object to that court's exercise of jurisdiction. In *Ford Motor*, the Eleventh Circuit held that a party that intervened to challenge the district court's injunction against a parallel state court proceeding had "acquiesced" to the district court's jurisdiction over its person. 471 F.3d at 1248. Similarly, in *County Security Agency*, the Sixth Circuit dismissed the intervenor's jurisdictional objections because "a motion to intervene is fundamentally incompatible with an objection to personal jurisdiction." 296 F.3d at 483. The Eleventh Circuit suggested that as an alternative to intervention, a third party can either file an amicus brief or ignore the proceedings and collaterally challenge the jurisdiction of the rendering court in his home jurisdiction when the prevailing party attempts to enforce the judgment. *Ford Motor*, 471 F.3d at 1248 n.34.

It seems apparent to us that in some cases an intervenor must necessarily acquiesce to the district court's jurisdiction. Indeed, in many cases an intervenor will have no objection to the district court's jurisdiction over her. On the other hand, consent to jurisdiction sometimes occurs unwillingly or even inadvertently. As the Court wrote in *Insurance Corp. of Ireland*, "[a] variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court." 456 U.S. at 703. For example, the parties may consent to jurisdiction through a forum selection clause in a contract, *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964); *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005); by filing a proof of claim in a bankruptcy proceeding, *Tucker Plastics, Inc. v. Pay 'N Pak Stores, Inc.*, 99 F.3d 910, 911(9th Cir. 1996) (per curiam); or by filing an original complaint, a counterclaim or a crossclaim, *Adam v. Saenger*, 303 U.S. 59, 67-68 (1938); *Schnabel v. Lui*, 302 F.3d 1023, 1037-38 & n.5 (9th Cir. 2002); *cf. Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1138-40 (9th Cir. 2006)

(en banc) (holding that a non-member who files a civil claim in an Indian tribal court consents to tribal jurisdiction).

**[11]** The rules governing consent are not as immutable as they may appear. We have held that a party who files a compulsory counterclaim under Rule 13(a) does not thereby waive any jurisdictional defenses he has previously or concurrently asserted, *Dragor Shipping Corp. v. Union Tank Car Co.*, 378 F.2d 241, 244 (9th Cir. 1967), nor has a party who files a permissive counterclaim under Rule 13(b) when objection to "personal jurisdiction . . . [is] asserted in the same pleading." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330 n.1 (9th Cir. 1984); *cf. Teyseer Cement Co. v. Halla Mar. Corp.*, 794 F.2d 472 (9th Cir. 1986) (holding there was no consent to *in personam* jurisdiction where the defendant's counterclaim followed a restricted appearance in a *quasi in rem* admiralty proceeding). In general, we have held that a party has consented to personal jurisdiction when the party took some kind of affirmative act—accepting a forum selection clause, submitting a claim, filing an action—that fairly invited the court to resolve the dispute between the parties. By contrast, where a party has filed a timely and unambiguous objection to the court's jurisdiction, we have concluded that the party has not consented to jurisdiction. This is true even if the party has preserved its own options by simultaneously asserting whatever claims or defenses it has against the plaintiff. Our commonsense approach avoids the pitfalls of a more formalistic era in which a defendant had to choose between contesting the forum's jurisdiction through a special appearance and entering a general appearance and defending himself on the merits. *See Gates Learjet Corp.*, 743 F.2d at 1330 n.1; Larry L. Teply & Ralph U. Whitten, Civil Procedure 209-10 (3d ed. 2004).

**[12]** We do not think that Bustos consented to the court's jurisdiction. To the contrary, Bustos "objected to in personam jurisdiction as effectively as [he] could have" at every turn. *Teyseer Cement Co.*, 794 F.2d at 478. Bustos sought to inter-

vene as of right because he correctly believed that "the disposition of the action [might] as a practical matter impair or impede [his] ability to protect [his] interest" and that his interest was not "adequately represented by existing parties." FED. R. CIV. P. 24(a)(2). One means of protecting his interest—perhaps his best—was to object to the court's lack of jurisdiction over his person or to the propriety of venue, and he objected to personal jurisdiction, venue and insufficiency of service of process promptly and unambiguously when he filed his answer in accord with Rule 12. *See* FED. R. CIV. P. 12(b)(2), (3), (5); *see also Wencke*, 783 F.2d at 835 (suggesting that appellant, who challenged the court's personal jurisdiction, should have formally intervened).

**[13]** We do not think that anything in the Federal Rules suggests that a non-named party cannot intervene of right and then contest the federal court's exercise of *in personam* jurisdiction. First, in the standard alignment, where a plaintiff sues a defendant, the defendant is entitled to object to the court's exercise of personal jurisdiction in its first responsive pleading. FED. R. CIV. P. 12(b)(2). Similarly, where the defendant seeks to join a necessary party under Rule 19, joinder is premised on the district court's ability to obtain jurisdiction over that party. FED. R. CIV. P. 19(a) ("A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party . . . ."). In the event that the court cannot obtain jurisdiction, it must dismiss the case if it cannot be tried without the third party. FED. R. CIV. P. 19(b) ("If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed . . . ."). In these cases—where either the plaintiff or a named defendant brings a party-in-interest to the action—the party may defend himself on both jurisdictional and substantive grounds.

Rule 24 permits a third party to enter the proceedings in order to protect his own interests. Rule 24(a) permits intervention of right where "the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." FED. R. CIV. P. 24(a). Rule 24(b) authorizes permissive intervention where there is some kind of common question of law or fact.[16] If the third party is intervening of right, as Bustos was here, we see little reason to deprive him of any of his procedural defenses merely because the original plaintiff failed to name him as a defendant or because no other party sought to have him joined pursuant to Rule 19.

**[14]** We do not see why an intervenor should be considered to have automatically consented to the jurisdiction of the court. The intervenor has consented to something, but it is not personal jurisdiction. Rather, the *quid pro quo* for his intervention is that he consents to have the district court determine all issues in the case, including issues of jurisdiction, venue and service of process. *See Ins. Corp. of Ireland*, 456 U.S. at 706 ("By submitting to the jurisdiction of the court for the limited purpose of challenging jurisdiction, the defendant agrees to abide by that court's determination on the issue of jurisdiction."). Intervention of right simply puts the intervenor into the position he would have been in had the plaintiff (or another party) properly named him to begin with.

This case demonstrates the wisdom of the rule. If the Receiver had played the game straight-up, named Bustos as a defendant, and served him with a complaint and summons pursuant to Rule 4, Bustos could have objected to personal jurisdiction in the district court, including in any appeal to this court. He also could have made an informed decision between (1) litigating both the jurisdictional and substantive issues in the District of Oregon and the Ninth Circuit or (2) sitting out

---

[16]Our opinion is limited to the case where a party seeks to intervene of right.

the Oregon proceedings and mounting a collateral challenge to jurisdiction when the Receiver appeared in Texas with a judgment in hand.[17] The Receiver's argument would leave Bustos with the second option only.[18] The Federal Rules do not require, and the Due Process Clause ought not to countenance, such an unfair election of defenses.

## IV.

Our decision does not necessarily foreclose other avenues of seeking disgorgement from Bustos, although we express no views on the merits of such proceedings. The SEC may opt to bring a civil enforcement action against Bustos. There may be additional proceedings the Receiver can pursue under 28 U.S.C. §§ 754 and 1692. *See Vision Commc'ns, Inc.*, 74 F.3d at 291. Or, assuming he has standing to do so, the Receiver may choose to bring suit against Bustos directly under § 12 of the Securities Act. However the Receiver or the SEC chooses to proceed, we admonish both to avoid improper shortcuts. Unless they can articulate some theory of liability that does not turn on Bustos's own violation of the securities laws, they must formally serve him with process, properly obtain *in per-*

---

[17]The risk of misunderstanding one's options seems particularly high in the context of receivership actions, where the line between *in personam* and *in rem* jurisdiction is vanishingly thin. Here, the Receiver's motion contained two claims, one (disgorgement for violation of the securities laws) that had to be asserted *in personam* and one (disgorgement of a fraudulent conveyance) that could be asserted *in rem*. The Receiver also requested the district court to approve summary proceedings, which, as we have discussed, are generally used where the court has *in rem* jurisdiction or the action is directed against a nominal defendant. Until the district court rejected the fraudulent conveyance claim, Bustos could not have determined with any certainty precisely what jurisdictional basis the Receiver was using to assert his claim and thus could not determine whether he could afford to risk sitting out the proceedings and mounting a later, collateral attack on the court's jurisdiction.

[18]Although Bustos could also have sought to file an amicus brief, we regard that option, in these circumstances, as an inadequate substitute for party status.

*sonam* jurisdiction over him, permit him to litigate fully all issues relating to both the fact and scope of his liability, and do so, of course, subject to all available legal and equitable defenses. To date, he has not been given that opportunity.

## V.

The district court lacked jurisdiction to enter the disgorgement order against Bustos. We therefore VACATE the district court's order and REMAND for further proceedings consistent with this opinion.

VACATED and REMANDED.