Opinion by Judge BYBEE; Dissent by Judge FISHER.
OPINION
BYBEE, Circuit Judge:
Ordinarily, an individual’s debts may be discharged in Chapter 7 bankruptcy under 11 U.S.C. § 727. However, a debt may not be discharged if it results from a violation of state or federal securities laws. 11 U.S.C. § 523(a)(19)(A)(i). The question in this case is whether the exception to discharge in § 523(a)(19)[1] applies when the debtor himself is not culpable for the securities violation that caused the debt. The bankruptcy court held that the debt was subject to discharge; the district court disagreed and held that the debt was excepted from discharge in bankruptcy. We agree with the bankruptcy court that the exception to discharge applies only to those who have themselves violated the securities laws. We thus reverse the judgment of the district court.
I
We have previously described the facts in this case, which we will relate briefly. See In re Sherman (“Sherman I”), 491 F.3d 948, 953-56 (9th Cir.2007). In 1997, the SEC instituted an enforcement action against several companies, which, among other things, led to the court appointment of a receiver.[2] See id. at 953-54 & n. 3 (citing SEC v. Whitworth Energy Res. Ltd., 243 F.3d 549 (9th Cir.2000) (unpublished table decision)). Debtor-Appellant •Richard Sherman is an attorney who represented some of the defendants in this enforcement action. Id. at 954.
As part of the enforcement action, the receiver ordered Sherman to disgorge two separate sums of money. Id. First, he was ordered to disgorge $54,980 that he withdrew from his clients’ litigation trust account in violation of a freeze order issued by the district court. Id. This debt is not at issue in this case. Second, the receiver ordered Sherman to return money he had received and retained, but had not earned, in a separate contingency case. Id. at 954-55. The district court calculated that he was responsible for disgorging $581,313.43 plus interest. The court held that Sherman lacked any interest in the money because he was obligated by the California Rules of Professional Conduct to return the amount by which his advances exceeded his ultimate fee. Importantly for our purposes, the SEC conceded that Sherman had not been found to have committed any securities violations on his own. See id. at 974 n. 33 (“[T]he present case involves a debtor who was not found *1011 to have himself violated the securities laws and has not been alleged to have committed other acts of fraud by the SEC.”).
Four days before the hearing on the disgorgement motion, Sherman and his wife filed a petition for Chapter 7 bankruptcy. Id. at 954. The SEC and the receiver responded by filing a motion to dismiss the petition. Id. at 955. The receiver independently filed a motion seeking a determination by the court that Sherman’s debts arising from the disgorgement order should be held nondischargeable under § 523(a)(4) and (6)[3] of the Bankruptcy Code. Id. The bankruptcy court denied the motion, and the SEC appealed to the district court, which reversed. Id. at 955-56. While the appeal was pending, the bankruptcy court granted Sherman a discharge under 11 U.S.C. § 727. Id. at 955. In Sherman I, we addressed a number of standing-related questions[4] and held that Sherman’s conduct did not constitute “cause” sufficient to warrant dismissal under § 707(a) of the Code, which allows a bankruptcy court to dismiss petitions filed in bad faith. Id. at 975. We then mentioned that “the SEC could have filed — and still could file — a complaint under § 523(a)(7) or (19),” though we did not explicitly conclude whether the SEC would prevail under either provision.[5] Id. at 975 n. 39.
In a subsequent adversary proceeding, the Shermans sought declaratory relief to establish that their debt to the SEC had been discharged under § 727 notwithstanding § 523(a)(19)’s discharge exception. The bankruptcy court granted summary judgment for the Shermans. It concluded, as a matter of law, that the SEC’s disgorgement order did not arise from a violation of securities laws. It further ruled that “[sjection 523(a)(19) was intended to apply to ‘wrongdoers’ and not to persons who are simply found to owe a debt which the SEC is authorized to enforce.”
The SEC appealed to the district court, which reversed the bankruptcy court. The district court adopted a broad interpretation of § 523(a)(19), treating as paramount the Sarbanes-Oxley Act’s goal of “protecting] investors by improving accuracy and reliability of corporate disclosures made pursuant to the securities laws.” It expressed particular concern that “Heading a limitation into the SEC’s ability to enforce its powers to obtain disgorgement of ill-gotten funds in an appropriate case ... would frustrate the ability of the SEC to enforce the federal securities laws.” Sherman appeals.[6]
*1012 II
We begin by making it clear that, in this case, the validity of the disgorgement order against Sherman is not at issue. We have previously held that a so-called “nominal defendant” may be ordered to disgorge funds that are traceable to fraud. See SEC v. Colello, 139 F.3d 674, 676 (9th Cir.1998) (“[A]mple authority supports the proposition that the broad equitable powers of the federal courts can be employed to recover ill gotten gains for the benefit of the victims of wrongdoing, whether held by the original wrongdoer or by one who has received the proceeds after the wrong.”). The courts can order the disgorgement of proceeds of fraud held by “nominal defendants” because they “ ‘hold[ ] the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute.’ ” Id. at 676 (quoting SEC v. Cherif, 933 F.2d 403, 414 (7th Cir.1991)). A nominal defendant is “not a real party in interest because ‘he has no legitimate claim to the disputed property.’ ” SEC v. Ross, 504 F.3d 1130, 1141 (9th Cir.2007) (quoting Colello, 139 F.3d at 676).[7] We found that Sherman “was effectively acting as a depository for those funds, as he legitimately obtained them in the first place but no longer had a valid claim to retain them,” and thus could be ordered to disgorge “money ... retained in excess of his fee for the services rendered in the contingency suits.” Sherman I, 491 F.3d at 959.
The only question at issue here is whether Sherman’s debt resulting from the disgorgement order can be . discharged under § 727 of the Bankruptcy Code (“Code”), or whether it falls under the exception to discharge created by § 523(a)(19). The Code provides, in relevant part, that “[a] discharge under § 727 ... does not discharge an individual from any debt,” § 523(a), that is for
(i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security
11 U.S.C. § 523(a)(19)(A). The bankruptcy court, siding with Sherman, held that a debt cannot be “for” a securities violation when the debtor has not committed such a violation. The district court, siding with the government, held that § 523(a)(19) is not limited to “persons who have been accused or found guilty of violations of the securities laws.” Although the question is a close one, we agree with the bankruptcy court and hold that § 523(a)(19) only prevents the discharge of a debt for a securities violation when the debtor is responsible for that violation.
A
We begin with the statute. The question is whether a debt can be “for” one of the violations listed in § 523(a)(19)(A) when the debtor has not committed any of those violations. The dictionary definition of the word “for” does not give us a clear *1013 answer. The word “for” is capacious, meaning, among other things, “[a]s the price of, or the penalty on account of’; “[i]n requital of’; or “[i]n order to obtain”; and “[i]n consequence of, by reason of, as the effect of.” VI Oxford English Dictionary 24-26 (2d ed.1989), available at http://www.oed.com/view/Entry/72761. On the one hand, in some sense, Sherman’s debt was “the penalty on account of’ the securities violations committed by his clients. On the other hand, we cannot say that Sherman owes the debt “in requital of’ fraudulent conduct — Sherman’s debt results from the fact that he never “earned” the money he owes, and not because he committed any wrongdoing.
The plain language of the statute alone does not clearly resolve the interpretive question before us. But it does bring into focus the interpretive dilemma in reading § 523(a)(19)(A): Should that section be read as if it said that a debt shall not be discharged if it “is for the violation by the debtor of any of the Federal securities laws”? Or, should the section be read as if it said that a debt shall not be discharged if it “is for the violation by the debtor or anyone else of the Federal securities laws”?
The government encourages us to focus on the absence of any explicit textual indication that the underlying violation must be committed by the debtor. Essentially, the government supports a bright-line interpretive rule: if the text of a discharge exception does not contain the limiting words “by the debtor” (or equivalent language), then the exception must be given its broadest natural reading.
There is some merit to the government’s argument. Indeed, the text of a number of other discharge exceptions specifically targets debts resulting from the conduct of the debtor. See, e.g., 11 U.S.C. § 523(a)(2)(B) (exception for fraudulent written statements “that the debtor caused to be made or published with intent to deceive” (emphasis added)); id. § 523(a)(6) (exception for debts “for willful and malicious injury by the debtor to another entity or to the property of another entity” (emphasis added)); id. § 523(a)(8)(B) (exception for educational loans “incurred by a debtor who is an individual” (emphasis added)); id. § 523(a)(9) (exception “for death or personal injury caused by the debtor’s operation of a motor vehicle, vessel, or aircraft [while intoxicated]” (emphasis added)); id. § 523(a)(15) (exception for spousal and child support payments “incurred by the debtor” in the course of divorce or separation proceedings (emphasis added)). The government’s argument is corollary to the familiar doctrine of inclusio unius est exclusius alterius (the inclusion of one is the exclusion of another). When Congress included the phrase “by the debtor” in these discharge exceptions, it excluded application of the discharge exception to all others. Conversely, it is a reasonable inference that, when Congress omitted the phrase “by the debt- or” in § 523(a)(19)(A)(i), it intended to cover debtors and others to whom the exception might reasonably apply. We might therefore conclude that Congress knew how to make it clear that a discharge exception should apply only to debtor-wrongdoers. Cf., e.g., Astrue v. Ratliff, — U.S. —, 130 S.Ct. 2521, 2527, 177 L.Ed.2d 91 (2010) (concluding that “the [Social Security Aet]’s express authorization of ... payments [to prevailing claimants’ attorneys] ... shows that Congress knows how to make fees awards payable directly to attorneys where it desires to do so,” and rejecting the claim that 28 U.S.C. § 2412(d) should therefore be interpreted to authorize fee compensation to a prevailing litigant, and not her attorney); Hardt v. Reliance Standard Life Ins. Co., — U.S. —, 130 S.Ct. 2149, 2156, 176 L.Ed.2d 998 (2010) (“The contrast between *1014 [29 U.S.C. § 1132(g)(1) and (2)] makes clear that Congress knows how to impose express limits on the availability of attorney’s fees in ERISA cases.”).
We do not think this point, although based on sound principles of statutory interpretation, is the end of the analysis. A number of other discharge exceptions in § 523 do not explicitly refer to the debtor’s conduct, even though at first glance, they seem to be best interpreted as targeting only debtors who are also wrongdoers. See, e.g., 11 U.S.C. § 523(a)(2)(A) (exception for debts “for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor’s or an insider’s financial condition”); id. § 523(a)(4) (exception for debts “for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny”); id. § 523(a)(5) (exception for debts “for a domestic support obligation”).
For example, § 523(a)(2)(A) creates an exception to discharge for debts “for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... actual fraud.” Even though the text of the statute does not state that the fraudulent conduct must have been the debtor’s, we have nonetheless incorporated that assumption into our understanding of the provision. See, e.g., Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir.2010) (“Making out a claim of non-dischargeability under § 523(a)(2)(A) requires the creditor to demonstrate ... [that] the debtor made representations; ... that at the time he knew they were false; [and] that he made them with the intention and purpose of deceiving the creditor.” (emphasis added)); Citibank v. Eashai (In re Eashai), 87 F.3d 1082, 1086 (9th Cir.1996) (“[T]o prove actual fraud, a creditor must establish ... that the debtor made the representations.... ” (emphasis added)). In fact, we have recently suggested that the debtor’s involvement in the fraudulent activity might be the only relevant consideration in determining whether the exception applies. See Sabban, 600 F.3d at 1222 (holding that a debtor need not have received a benefit from the fraudulent activity in order for § 523(a)(2)(A) to prevent a discharge).
We have read § 523(a)(4) in a similar fashion. Although the statute only prohibits the discharge of debts “for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny” — again, without any mention that the misconduct must have been by the debtor — we have strongly suggested that it applies only in cases where the debtor is responsible for the misconduct. See, e.g., Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1128 (9th Cir.2003) (rejecting a claim under § 523(a)(4) because the defendant was not a fiduciary).
A contrary reading of these provisions would extend the discharge exceptions to the “honest but unfortunate debtor,” Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934), in cases where the debtor was unwittingly involved with, and unknowingly received benefits from, a wrongdoer. For example, suppose we had not construed § 523(a)(2)(A) to apply only in those cases where the debtor committed the fraud. Suppose, further, that a bank loaned money to an innocent person under the express condition that the loan be guaranteed by a third party who had greater assets. If the third party lies about his assets in order to qualify to be the guarantor, then the borrower will have, in effect, obtained “money ... by ... false pretenses, a false representation, or actual fraud,” even if she did not know or have reason to know about the guarantor’s misconduct. If she is subsequently *1015 unable to repay her loan and is driven to bankruptcy, we think it would contravene the “fresh start” purposes of the system to deny her a discharge on the basis of a third party’s misconduct.[8]
Admittedly, nothing in the text of any of these provisions makes it clear that the exceptions should apply only to debtors who are responsible for the wrongdoing that caused the debt. However, the government’s rule would require us to adopt the opposite presumption: that exceptions should be applied broadly unless expressly confined to guilty debtors. We do not think the structure of § 523, taken alone, enables us to resolve this question. We must therefore examine § 523(a)(19) in light of the purposes of the Bankruptcy Code.
B
Although § 523(a)(19)’s text and structure do not resolve the dispute before us, we believe that guidance from Supreme Court, as well as our previous opinions, strongly favor the bankruptcy court’s interpretation of the statute. At the core of the Bankruptcy Code are the twin goals of ensuring an equitable distribution of the debtor’s assets to his creditors and giving the debtor a ‘fresh start.” See BFP v. Resolution Trust Corp., 511 U.S. 531, 563, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). Put simply, the Bankruptcy Code accomplishes this goal by including the bulk of the debtor’s property in the bankruptcy estate, see 11 U.S.C. § 541(a), distributing that property to creditors in accordance with various provisions of the Code, and finally discharging the debtor’s remaining debts unless those debts either fall into an exception or there is reason to deny a discharge altogether, see id. § 727(a). Accordingly, the exceptions to discharge enumerated in § 523 necessarily prevent a debtor from receiving a completely fresh start, as the debt remains a burden even after all other debts are legally satisfied.
With this in mind, the Supreme Court has adopted a rule of construction interpreting exceptions to discharge narrowly. See Kawaauhau v. Geiger, 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (“[E]xceptions to discharge should be confined to those plainly expressed” (internal quotation marks omitted)); Jett v. Sicroff (In re Sicrojf), 401 F.3d 1101, 1104 (9th Cir.2005); see also 4 Collier on Bankruptcy ¶ 523.05 (2010) (“In determining whether a particular debt falls within one of the exceptions of § 523, the statute should be strictly construed against the objecting creditor and liberally in favor of the debtor. Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system.”). We also recognize that the Bankruptcy Code “limits the opportunity for a completely unencumbered new begin *1016 ning to the ‘honest but unfortunate debt- or.’” Grogan v. Garner, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Taken together, these two basic principles suggest that exceptions to discharge should be limited to dishonest debtors seeking to abuse the bankruptcy system in order to evade the consequences of their misconduct.
Likewise, if we adopt the government’s interpretation of § 523(a)(19), an innocent[9] recipient of funds obtained by another party’s participation in a securities violation can not only be ordered to disgorge, but must also continue paying off that debt even if he becomes insolvent and is forced to file for bankruptcy. Although we do not dispute Colello’s conclusion that a court may order recipients of these funds to disgorge any funds that remain in their possession, we do not think Congress wanted to immunize these debts from discharge in bankruptcy, when the debtor has not been found guilty of any wrongdoing.
C
The legislative history of § 523(a)(19) offers modest additional support for our interpretation. We begin by observing that it is unlikely that Congress actually considered the specific question of whether innocent third parties subject to disgorgement orders should be subject to a discharge exception. See Albernaz v. United States, 450 U.S. 333, 341, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) (“Congress cannot be expected to specifically address each issue of statutory construction which may arise.”). The § 523(a)(19) exception, enacted as part of the Sarbanes-Oxley Act, responded to concerns that the Bankruptcy Code “permit[ted] wrongdoers to discharge their obligations under court judgments or settlements based on securities fraud and other securities violations.” S.Rep. No. 107-146, at 8 (2002). Specifically, Congress sought to address the obstacles posed by the fact that the elements of various securities violations do not perfectly overlap with the elements of fraudulent conduct within the meaning of § 523(a)(2)(A), frequently forcing the SEC to relitigate otherwise resolved cases before a bankruptcy judge because the violator was not collaterally estopped from challenging the claim of fraud. 148 Cong. Rec. S7418, S7419 (2002). In other words, one reason Congress enacted the exception was to target those parties who are guilty of securities violations, in order to ensure that judgments for securities violations are treated, in bankruptcy, like judgments for fraud. This provides further support for our reading; as we note above, we have previously held that a debt falls into the discharge exception for fraud only when the debtor engaged in the fraudulent conduct. See Sabban, 600 F.3d at 1222.
The government offers a contrary reading of the legislative history, citing Senator Leahy’s explanation that § 523(a)(19) was intended to “prevent wrongdoers from using the bankruptcy laws as a shield and to allow defrauded investors to recover as much as possible.” 148 Cong. Rec. S7418, S7419 (2002). The government interprets this statement to mean that Congress implemented the exception to further the independently important goals of punishment and compensation. We disagree with this interpretation. It is unlikely that *1017 Congress sought to divorce the two goals from each other. A better understanding of Senator Leahy’s comments is that Congress wanted to compensate defrauded investors by recapturing the ill-gotten gains of those who were responsible for the fraud in the first place. Hence, Senator Leahy, like the Senate Report on Sarbanes-Oxley, referred to “wrongdoers” who might “discharge their obligations under court judgments or settlements based on securities fraud and other securities violations.” Id. (emphasis added). The emphasis on preventing “wrongdoers” from using the bankruptcy laws can only refer to debtors who are also wrongdoers; neither statement supports denying discharge to debtors who have been drawn into a securities fraud but are not themselves “wrongdoers.”
D
The government encourages us to adopt the district court’s reasoning, which characterized Sherman “as a constructive trustee of the funds he received,” and concluded that a trustee “cannot avoid his obligation to return funds he held in trust for a third party by filing for bankruptcy.” At first glance, this reasoning appears to follow naturally from the disgorgement order against Sherman. We think, however, that this argument confuses disgorgement of funds with discharge in bankruptcy. In Colello — which was not a bankruptcy case — we described so-called “nominal defendants” as parties who “hold[ ] the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute.” 139 F.3d at 676 (internal quotation marks omitted). Since Sherman was in possession of funds that he had received from his clients but had not yet earned, the district court properly relied on a Colello theory when issuing its disgorgement order. But requiring Sherman to disgorge whatever he has retained is very different from deciding that he is prevented from discharging those debts in bankruptcy. The theories and the reasons behind disgorgement and discharge are quite distinct.
Even if Sherman nominally held the funds in some kind of fiduciary capacity as the dissent suggests, Dissenting Op. at 1022-24, the applicable exception would be § 523(a)(4), not § 523(a)(19). That section prohibits the discharge of debts “for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.” For instance, if the government’s position were that Sherman was not entitled to the funds and had improperly appropriated that money, then it could have sought a determination that Sherman was guilty of embezzlement. See Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton), 942 F.2d 551, 555 (9th Cir.1991) (listing, as the elements of embezzlement, “(1) property rightfully in the possession of a nonowner; (2) nonowner’s appropriation of the property to a use other than which it was entrusted; and (3) circumstances indicating fraud” (internal quotation marks omitted)). If, as the dissent suggests, Sherman was essentially a trustee of Whitworth’s money and improperly spent advance funds instead of placing them in a trust, see Dissenting Op. at 1022-23, the government could have urged that Sherman be found responsible for “defalcation while acting in a fiduciary capacity.” See Blyler v. Hemmeter (In re Hemmeter), 242 F.3d 1186, 1190-91 (9th Cir.2001) (“The definition of defalcation includes both the misappropriation of trust funds or money held in any fiduciary capacity; and the failure to properly account for such funds.” (internal quotation marks omitted)). Indeed, “[e]ven innocent acts of failure to fully account for money received in trust will be held as non-dischargeable defalcations; no intent to defraud is required.” Id. Had the government sought to except Sherman’s debt *1018 from discharge on § 523(a)(4) grounds, it might well have prevailed. Indeed, it would be far more accurate to say that Sherman’s debt is “for” his own breach of his fiduciary duties than it is to say that it is owed “for” Whitworth’s securities violation. As we noted in Sherman I, however, the SEC is time-barred from seeking a determination that § 523(a)(4)’s exception prohibits the discharge of Sherman’s debt. 491 F.3d at 975 n. 39.
E
The district court also expressed concern that, under the interpretation we adopt today, “persons who would otherwise be liable to make disgorgement of funds derived from a securities law violation would be able to avoid their debts by filing for protection under the bankruptcy laws.” In particular, the court sought to avoid the possibility that “one party could violate the securities laws and transfer the proceeds derived from the violation to a third party who could insulate those funds from disgorgement by filing for bankruptcy.”
This concern is flawed in at least two respects. First, as Sherman notes, if the third party in question has actually aided or abetted a securities violation, that party may be prosecuted for a violation of securities laws in addition to the primary violator. Although Sherman’s retention (and subsequent loss) of unearned fees from a contingency case in which his client’s securities violation may appear suspect, the SEC’s concession that Sherman had not violated any securities laws undermines its subsequent attempts to leverage this appearance of culpability into any legal consequence.
Second, it is not clear how a third party could “insulate” a securities violator’s ill-gotten gains by taking those gains and filing for bankruptcy. If a creditor can show that a debtor has concealed property or funds from the bankruptcy court, a discharge can be denied in its entirety, 11 U.S.C. § 727(a)(2), or revoked after it is granted, 11 U.S.C. § 727(d). Otherwise, any funds possessed by the debtor at the time the discharge has been granted will presumably have been included in the bankruptcy estate and distributed to creditors.[10] See 11 U.S.C. § 541. On the other hand, if Sherman is not granted a discharge, he will not simply have to hand over funds in his possession — rather, the SEC will be entitled to money that Sherman does not yet have in order to satisfy the debt, preventing Sherman from receiving the “fresh start” promised by bankruptcy.
In short, the Bankruptcy Code already includes protections against attempting to conceal assets or defraud creditors, or otherwise failing to disgorge available assets. There is no additional need for us to expand the scope of § 523(a)(19) to cover innocent debtors in order to accomplish this goal.
*1019 III
We hold that 11 U.S.C. § 523(a)(19) prevents the discharge of debts for securities-related wrongdoings only in cases where the debtor is responsible for that wrongdoing. Debtors who may have received funds derived from a securities violation remain entitled to a complete discharge of any resulting disgorgement order.
REVERSED.

. For purposes of brevity, unless otherwise indicated, references to statutory sections throughout this opinion will refer to sections of the Bankruptcy Code (Title 11).

. The receiver was, in relevant part,
immediately authorized, empowered, and directed ... to employ attorneys and others to investigate and, where appropriate, to defend, institute, pursue, and prosecute all claims and causes of action of whatever kind and nature which may now or hereafter exist as a result of the activities of present or past employees or agents of Whitworth, Williston, Amerivest and their subsidiaries and affiliates, including but not limited to Insured Energy Drilling Program 1986-4, a limited partnership, et al. v. Trust Company of the West, a California trust company, et al., Case No. BC 108-297, pending in Los Angeles County Superior Court.
Sherman I, 491 F.3d at 953 n. 2 (internal quotation marks omitted).

. Section 523(a)(4) creates an exception to discharge for debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.” Section 523(a)(6) excepts debts "for willful and malicious injury by the debtor to another entity or to the property of another entity.”

. Specifically, we held that because the disgorgement judgment gave the SEC an enforceable right against Sherman that had not been extinguished by a settlement agreement, the SEC was considered a creditor with respect to the disgorgement order and therefore had Article III standing to seek dismissal of the Shermans' bankruptcy petition. Sherman I, 491 F.3d at 965. We also held that the bankruptcy court's entry granting discharge under § 727 did not moot the appeal because it did not terminate the bankruptcy petition. Id.

. We also noted that the SEC was time-barred from seeking non-dischargeability under § 523(a)(2), (4), (6), and (15). Sherman I, 491 F.3d at 975 n. 39.

. We review de novo a district court’s decision on appeal from a bankruptcy court. Greene v. Savage (In re Greene), 583 F.3d 614, 618 (9th Cir.2009). We review the bankruptcy court’s conclusions of law de novo, but defer to its factual findings unless they are clearly erroneous. Id.

. In Ross, we carefully distinguished between someone, such as an "employee or vendor,” who "receive[s] compensation in return for services rendered,” and someone who receives funds as a result of his "own violations of the securities laws.” Ross, 504 F.3d at 1142. Here, as in Ross, "nothing in the underlying [securities] action establishes that [Sherman] has violated the securities laws. He was not a party to that action and, so far as we can tell, had no reason to know that his own activities in connection with [the companies] were in question.” Id. No adverse inference may be derived from the fact that Sherman is subject to a disgorgement order.

. The dissent rejects this comparison, arguing that "[nominal-defendant] [d]isgorgement of the proceeds of a violation is owed for the violation, whereas repayment of a loan is owed for the loan, not a fraud committed antecedent to the granting of the loan.” Dissenting Op. at 1023 n. 8. We have previously recognized that the term “nominal defendant” encompasses both the “paradigmatic” case — a bank or trustee who has a custodial claim to the property — and "persons who are in possession of funds to which they have no rightful claim.” Ross, 504 F.3d at 1141.
It would be more accurate to say that Sherman owes the debt "for” the advance payment he received from Whitworth and his subsequent failure to earn those funds, rather than stating that Sherman owes the debt for the violation of the securities laws. For example, if a bank-trustee misappropriates trust funds and the owner of a trust seeks to use those funds to pay a loan, it would be more accurate to say that the bank-trustee owes a debt "for” its misappropriation, and that the owners owes a debt "for” the loan, than it would be to say that the bank-trustee owes a debt "for” the loan.

. We do not suppose that every debtor who owes a disgorgement-based debt is necessarily an innocent recipient for purposes of the rule we adopt. For instance, in Colello itself, we found Colello liable in part because he invoked his Fifth Amendment privilege not to testify and drew the adverse inference that the funds he received were ill-gotten. 139 F.3d at 677. However, in cases like this one, where neither party claims that the debtor is responsible for any securities-related wrongdoing, we believe the debtor must be treated like an "innocent” one for purposes of § 523(a)(19).

. The dissent argues that our decision enables Sherman to insulate funds from the disgorgement judgment because the money subject to disgorgement is actually Whit-worth's money held in trust and therefore never entered the estate. Dissenting Op. at 1022-24. Indeed, the dissent argues that we should treat the money subject to disgorgement as money actually held in trust. See, e.g., Dissenting Op. at 1120 ("[Sherman] owes the SEC because he held the proceeds of fraud in trust"). While this might be viable if the money were actually part of a trust (and was therefore still available for satisfying the disgorgement judgment), nothing in the record indicates that this was the case here. While Sherman's failure to place these funds in a trust might, as we have noted, constitute a breach of his fiduciary duties, the mere fact that he had a duty to place the money in a trust (which he might have failed to fulfill) does not mean that we may act as if the funds were actually in a trust.