**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RYAN COX, individually and on behalf of all other similarly situated,

*Plaintiff-Appellant*,

v.

COINMARKETCAP OPCO, LLC; BINANCE CAPITAL MANAGEMENT COMPANY, LTD., DBA Binance, DBA Binance.com; BAM TRADING SERVICES, INC., DBA Binance.US; CHANGPENG ZHAO; CATHERINE COLEY; YI HE; TED LIN,

*Defendants-Appellees*.

No. 23-15363

D.C. No. 3:21-cv-08197-SMB

OPINION

Appeal from the United States District Court
for the District of Arizona
Susan M. Brnovich, District Judge, Presiding

Argued and Submitted February 9, 2024
Phoenix, Arizona

Filed August 12, 2024

Before:  Marsha S. Berzon, Andrew D. Hurwitz, and
Anthony D. Johnstone, Circuit Judges.

Opinion by Judge Berzon

## SUMMARY[*]

**Commodity Exchange Act / Personal Jurisdiction**

The panel affirmed in part, reversed in part, and vacated in part the district court's dismissal, for lack of personal jurisdiction, of Ryan Cox's action under the Commodity Exchange Act, alleging that defendants unlawfully manipulated the price of a cryptocurrency called "HEX."

Although the Act authorizes nationwide service of process, the district court concluded that its venue provision must be satisfied before the nationwide service provision applies.  As a result, the district court reasoned, Cox first had to show that the defendants had sufficient minimum contacts with the forum state, Arizona.  The defendants were two domestic companies headquartered in states other than Arizona, a foreign company, and three individual officers of the foreign company.  The district court concluded that each defendant lacked sufficient contacts with Arizona and dismissed the complaint for lack of personal jurisdiction.

Guided by case law interpreting similar provisions in other statutes and settled principles of statutory construction,

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

the panel held that the Commodity Exchange Act authorizes nationwide service of process independent of its venue requirement. Thus, to establish personal jurisdiction in Arizona under the Act, Cox did not have to show first that the venue requirement was satisfied. The panel concluded that the district court had personal jurisdiction over the U.S. defendants under the Act because they had sufficient contacts with the United States to satisfy due process. The panel also concluded that the complaint alleged colorable price manipulation claims against the U.S. defendants. The panel therefore reversed the district court's dismissal of the claims under the Act against those defendants and remanded for further proceedings.

The panel affirmed the district court's dismissal of Cox's claims under the Act as to the foreign corporate and individual defendants but vacated the dismissal against them "with prejudice" and remanded with instructions to dismiss the complaint against the foreign defendants without prejudice. The panel concluded that the foreign defendants lacked sufficient contacts with the United States for purposes of personal jurisdiction.

**COUNSEL**

Matthew W. Schmidt (argued), Schmidt Law Corporation, Tiburon, California; Alexander Kolodin, James C. Sabalos, and Veronica Lucero, Davillier Law Group LLC, Phoenix, Arizona; George R. Wentz, Jr., Davillier Law Group LLC, New Orleans, Louisiana; for Plaintiff-Appellant.

Karen R. King (argued), Mary G. Vitale, and Raymond D. Moss, Morvillo Abramowitz Grand Iason & Anello P.C., New York, New York; Andrea Tazioli, NCP Law PLLC,

Phoenix, Arizona; Roberto J. Gonzalez (argued), E. Garrett West, and Anna Lipin, Paul Weiss Rifkind Wharton & Garrison LLP, Washington, D.C.; Michael J. Gleason (argued), Hahn Loeser & Parks LLP, Cleveland, Ohio; Jeffrey A. Brauer, Hahn Loeser & Parks LLP, San Diego, California; Ann-Elizabeth Ostrager, Sullivan & Cromwell LLP, New York, New York; for Defendants-Appellees.

## OPINION

BERZON, Circuit Judge:

We consider whether the Commodity Exchange Act ("the Act"), 7 U.S.C. § 25(c), authorizes nationwide service of process without regard to whether the venue provision in the same subsection of the Act is met. Our answer, contrary to the district court's conclusion, is yes.

Ryan Cox contends in this action that the defendants violated the Act by unlawfully manipulating the price of a cryptocurrency called "HEX." He alleges that the defendants participated in artificially suppressing the price of HEX by inaccurately lowering its ranking among cryptocurrencies on a website called CoinMarketCap.com. Although the Act authorizes nationwide service of process, 7 U.S.C. § 25(c), the district court concluded that its venue provision must be satisfied before the nationwide service provision applies. As a result, the district court reasoned, Cox first had to show that the defendants had sufficient minimum contacts with the forum state, Arizona.

The defendants are two domestic companies headquartered in states other than Arizona, a foreign

company, and three individual officers of the foreign company. The district court concluded that each defendant lacked sufficient contacts with Arizona and dismissed the complaint for lack of personal jurisdiction.

Because we conclude that the Commodity Exchange Act authorizes nationwide service of process independent of its venue requirement, we reverse in part. We conclude that the district court had personal jurisdiction over the U.S. defendants under the Act and that the complaint alleges colorable claims against them; we therefore reverse the district court's dismissal of the claims under the Act against those defendants and remand for further proceedings. We affirm the district court's dismissal of Cox's claims under the Act as to the foreign corporate and individual defendants, as they lack sufficient contacts with the United States for purposes of personal jurisdiction.[1]

## I. Background

## A. Factual Background[2]

Cryptocurrency is a "digital asset[]" traded by investors on online "cryptocurrency exchanges." Unlike traditional forms of currency, cryptocurrency is "not issued by a government or a central bank." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1007 (9th Cir. 2023). Instead, it is

---

[1] Cox does not challenge on appeal the district court's dismissal of his state law claims for lack of personal jurisdiction.

[2] Unless otherwise noted, the facts in this background section, including all quotations, are drawn from allegations in the complaint. As this appeal comes to us from the district court's grant of a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to Cox and assume the facts he alleges in his complaint are true. *See Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 998 n.1 (9th Cir. 2013).

"decentralized digital money" that is "created by developers" "based on blockchain technology." *Id.*

HEX, the subject of Cox's complaint was "the best performing cryptocurrency of 2020." According to the complaint, the defendants (collectively "CMC") have for their own financial gain unlawfully and artificially suppressed the value of HEX and artificially inflated the value of other cryptocurrencies.

## 1. Defendant CoinMarketCap

CoinMarketCap is a Delaware limited liability company headquartered in Delaware. CoinMarketCap operates a website, CoinMarketCap.com, that publishes information about cryptocurrencies, including HEX, and ranks them based on defined criteria. CoinMarketCap.com is the "'dominant data source and go-to platform for asset pricing' in the cryptocurrency space." Cryptocurrencies with higher rankings are displayed higher up on CoinMarketCap.com's homepage.

Each cryptocurrency listed on CoinMarketCap.com appears next to a "buy" button that, if clicked, directs users to a separate cryptocurrency exchange, either Blockchain.com or "Binance." HEX, however, cannot be purchased through either of these two cryptocurrency exchanges. Instead, HEX is traded on thirteen other cryptocurrency exchanges.

CoinMarketCap.com ranks cryptocurrencies based on their overall market capitalization. Market capitalization, or "market cap," is calculated by multiplying the cryptocurrency's price by its circulating supply at a given time. According to the complaint, "[t]here is a direct relationship between the value of a cryptocurrency and its

market capitalization ra[n]king. All other things being equal, [c]ryptocurrencies to [which] CoinMarketCap.com assigns higher rankings are considered to be more solid investments and hence more valuable."

Based on its market cap, the complaint alleges, HEX should be ranked in the top twenty cryptocurrencies on CoinMarketCap.com. Instead, it has been ranked at #201 since September 2020. Although HEX was ranked twentieth on September 20, 2020, a week later, CoinMarketCap.com began suppressing its ranking. Since then, CoinMarketCap.com "locked HEX's ranking at #201." As a result, HEX appeared on the third page of results on the website.

According to the complaint, CoinMarketCap.com's improper ranking of HEX has artificially suppressed its value, causing it to trade at lower prices. "[B]ut for" that improper ranking, "at least some individuals who purchased higher-ranked cryptocurrencies would have purchased HEX instead." CoinMarketCap's statements about HEX's ranking are "untrue" and "[r]esult[] from a misapplication, or selective application, of CoinMarketCap.com's own rankings guidelines." "By misrepresenting HEX's ranking CoinMarketCap.com has directly or indirectly participated in the artificial manipulation of the prices of one or more commodities."

## 2. Defendants Binance Capital and Binance.US

Binance Capital Management Co., Ltd. ("Binance Capital") owns CoinMarketCap.com. Binance Capital was founded in China, has previously been headquartered in Japan and Malta, and now operates in a decentralized manner with no publicly identified headquarters.

Binance Capital operates Binance, the largest cryptocurrency exchange in the world by market capitalization and trading volume. Through that exchange, Binance Capital provides a marketplace for cryptocurrency trades and earns a commission on those transactions.

Binance Capital previously "engaged in numerous online cryptocurrency transactions inside the United States, with United States residents." But "[i]n 2019, Binance was banned in the United States on regulatory grounds and stopped accepting US users that year."

In response to the ban, Binance Capital partnered with a U.S. company, BAM Trading Services Inc., to launch a new cryptocurrency exchange in North America, Binance.US. Binance.US is Binance Capital's U.S. affiliate. BAM Trading Services (referred to in this opinion as "Binance.US") operates Binance.US. Binance.US uses some of Binance Capital's technologies, including its "wallet" and "matching engine," and it "offers a very similar interface and feature set" to Binance Capital's cryptocurrency exchange. On "information and belief," Binance.US was aware "that there were issues with CoinMarketCap.com's rankings."

When U.S. visitors to CoinMarketCap.com click on a "buy" button that directs them to "Binance," it takes them to "Binance.US's website." The website link "does not inform users that they are being directed to a Binance subsidiary" but does invite them to "purchase cryptocurrency through 'Binance.'" The complaint alleges that "it is simply not clear where Binance ends and Binance.US begins or [] whether there is any meaningful distinction between the two."

On "information and belief," Binance Capital issued the cryptocurrencies Binance Coin and Binance USD, both of

which are ranked higher than HEX on CoinMarketCap.com. On "information and belief," Binance Capital has a financial interest in "ensuring the strongest possible demand for BinanceCoin and Binance USD." On "information and belief," CoinMarketCap.com's improper ranking of HEX "provides a financial advantage" to CoinMarketCap.com, Binance Capital, and Binance.US., as CoinMarketCap.com users can buy cryptocurrencies through the Binance.US exchange or through CoinMarketCap.com's sponsor, Blockchain.com, but HEX is not sold through Binance.US or Blockchain.com.

### 3. Individual Defendants[3]

Changpeng Zhao is the CEO of Binance Capital, defendant Ted Lin its Chief Growth Officer, and defendant Yi He its Chief Marketing Officer. "Upon information and belief," Zhao, Lin, and He were "aware at the time Binance [Capital] purchased CoinMarketCap.com that there were issues with its rankings." The complaint alleges that Zhao resides in Taiwan, He resides in Malta, and Lin does not reside in Arizona.

According to the complaint, by encouraging potential purchasers or sellers of cryptocurrencies to rely on CoinMarketCap.com's inaccurate rankings, Binance Capital, Binance.US, and the individual defendants have "directly or indirectly participated in the artificial manipulation of the price of one or more commodities." "Defendants either willfully participated in the manipulation or failed to review or check information that they had a duty

---

[3] In district court, Cox voluntarily dismissed individual defendant Catherine Coley, former CEO of Binance.US.

to monitor, or ignored obvious signs of market manipulation."

## B. Procedural History

Cox, an Arizona resident, filed a putative class action complaint on behalf of himself and those similarly situated in the District of Arizona, alleging violations of the Commodity Exchange Act and the Arizona Consumer Fraud Act. CoinMarketCap, Binance.US, Binance Capital, and the individual defendants moved to dismiss the complaint for lack of personal jurisdiction and failure to state a claim. Each asserted a lack of sufficient contacts with Arizona. The district court granted the motions based on lack of personal jurisdiction and so did not consider whether the complaint failed to state a claim.

The court concluded that Cox "cannot rely on the national service provision" of the Commodity Exchange Act to establish personal jurisdiction because "[t]he statute requires plaintiffs to first satisfy the venue provision, meaning Plaintiff must establish [that the defendants] had sufficient minimum contacts with Arizona." The court held that because Cox had not shown that any of the defendants had sufficient contacts with Arizona, it lacked specific personal jurisdiction over them. There was no motion to dismiss for lack of venue, and the court did not separately consider whether there was venue in Arizona.

## II. Discussion

Reviewing de novo the district court's dismissal for lack of personal jurisdiction, *see Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004), we conclude that the court's personal jurisdiction under the nationwide service provision of the Commodity Exchange

Act does not depend on satisfaction of the Act's venue requirement.

## A. Statutory Analysis: Nationwide Service of Process Under the Commodity Exchange Act

"For a court to exercise personal jurisdiction over a defendant, there must be an 'applicable rule or statute [that] potentially confers jurisdiction over the defendant.'" *Id.* (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). "Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 409 (2017). That is because a "federal court obtains personal jurisdiction over a defendant if it is able to serve process on him." *Action Embroidery*, 368 F.3d at 1177 (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986)); *see BNSF Ry.*, 581 U.S. at 409; Fed. R. Civ. P. 4(k).

The Commodity Exchange Act provides, in pertinent part:

> Any action brought under subsection (a) of this section may be brought in any judicial district wherein the defendant is found, resides, or transacts business, or in the judicial district wherein any act or transaction constituting the violation occurs. Process in such action may be served in any judicial district of which the defendant is an

inhabitant or wherever the defendant may be
found.

7 U.S.C. § 25(c).  The parties agree that the first sentence
concerns venue and the second sentence concerns personal
jurisdiction.  *Id*.; *see BNSF Ry.*, 581 U.S. at 408, 410 (noting
that "Congress generally uses the expression, where suit
'may be brought,' to indicate the federal districts in which
venue is proper," and that the expression "confers no
personal jurisdiction on any court").  The question is
whether, as the district court held, establishing personal
jurisdiction over CMC under the Act's nationwide[4] service
of process provision requires first satisfying the venue
requirement in the preceding sentence.

Our inquiry is guided by several cases in which we have
held that personal jurisdiction under closely analogous long-
arm statutes is established independent of venue.  *Action
Embroidery* involved Section 12 of the Clayton Act, which
provides:

> Any suit, or proceeding under the antitrust
> laws against a corporation may be brought
> not only in the judicial district whereof it is
> an inhabitant, but also in any district wherein
> it may be found or transacts business; []
> and *all process in such cases may be served*

---

[4]  The parties assume that the Act authorizes "nationwide" service of
process.  We have sometimes described similarly-worded provisions as
authorizing "worldwide" service.  *See Go–Video, Inc. v. Akai Electric
Co. Ltd.*, 885 F.2d 1406, 1408 (9th Cir. 1989) (discussing the Clayton
Act's "worldwide service of process authorization").  Because the
distinction does not matter here, we assume without deciding that 7
U.S.C. § 25(c)'s authorization is nationwide.

> *in the district of which it is an inhabitant, or*
> *wherever it may be found.*

368 F.3d at 1177 (quoting 15 U.S.C. § 22). The district court there had held that "proper venue is a necessary component of personal jurisdiction" under the Clayton Act. *Id*. We reversed, "hold[ing] that venue and personal jurisdiction are independent requirements" under the Clayton Act, with the result that "the existence of personal jurisdiction over [a] defendant does not depend upon there being proper venue in that court." *Id*. at 1176, 1179–80.

*Action Embroidery* highlighted the traditional distinction between personal jurisdiction and venue. "It has long been recognized that the question of a federal court's competence to exercise personal jurisdiction over a defendant is distinct from the question of whether venue is proper." *Id.* at 1178–79. "[J]urisdiction is the *power* to adjudicate, while venue, which relates to the place where judicial authority may be exercised, is intended for the *convenience* of the litigants." *Id*. at 1179 (quoting *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1313 (9th Cir. 1985)). As a result, "personal jurisdiction . . . is typically decided in advance of venue." *Id*. (quoting *Leroy v. Great W. United Corp.,* 443 U.S. 173, 180 (1979)).

*Action Embroidery* concluded:

> The juxtaposition of the venue and service of
> process provisions in Section 12, without
> more, does not convince us that Congress
> intended to make these concepts analytically
> interdependent, rendering a court's exercise
> of personal jurisdiction over an antitrust
> defendant dependent on the propriety of

> venue. Without a clear indication from
> Congress that it intended to do so, we will not
> blur the basic, historic difference between
> these discrete concepts and what is required
> for their satisfaction.

*Id*. at 1179.

*Action Embroidery* relied in part on *Go–Video*. *Go–Video* considered whether an "antitrust plaintiff [must] satisfy the [Clayton Act's] venue provision if it is to avail itself of its worldwide service of process authorization." 885 F.2d at 1408. Like CMC here, the appellants in *Go–Video* contended that the reference in the second clause of section 12 of the Clayton Act to service of process "in such cases" is a phrase which "refers to cases under which the venue requirements of the section have already been satisfied." *Id*. We rejected this argument, concluding that the words "such cases" refer to "the cases encompassed by the first line of section 12, namely '[a]ny suit, action, or proceeding under the antitrust laws against a corporation.'" *Id*. (quoting 15 U.S.C. § 22); *see id.* at 1412–13. In support of this conclusion, *Go–Video* reasoned that there is no indication in the legislative history of the Clayton Act that "Congress affirmatively *intended* that [the] service of process provision would be limited by the venue provision." *Id*. at 1410. In *Go–Video*, we further explained that our conclusion that the service of process provision was independent of the venue provision was "clearly the one more consonant with the purpose of the Clayton Act and better comports with a section designed to expand the reach of the antitrust laws and

make it easier for plaintiffs to sue for antitrust violations." *Id*. at 1413.**5**

Similarly, in *S.E.C. v. Ross*, 504 F.3d 1130 (9th Cir. 2007), and *Vigman* we considered analogous nationwide service of process provisions and treated the question of personal jurisdiction as independent of venue. Addressing the nationwide service of process provision of the Securities Act of 1933, 15 U.S.C. § 77v(a), *Ross* explained that, "[a]s in *Vigman*, the question of whether the court can exercise personal jurisdiction over a party is distinct from the question of whether venue will properly lie in the court exercising jurisdiction." 504 F.3d at 1139, 1140 n.11; *see Vigman*, 764 F.2d at 1313–18 (analyzing personal jurisdiction and venue separately under the Securities Exchange Act of 1934).

Our holdings in *Action Embroidery*, *Go–Video*, *Vigman*, and *Ross* are directly applicable here. Although these precedents involved different statutory provisions from the one today before us, the statutory structure and the venue and service of process language at issue in those cases are virtually indistinguishable from that in the Commodity Exchange Act. *Ross*, facing similar congruity, relied on our precedent interpreting another long-arm statute where the

---

5 *Go–Video* ultimately held that even if the Clayton Act's venue requirement was not satisfied, the venue provision of then-28 U.S.C. § 1391(d), concerning venue over alien parties, was also available. *See id*.

language "track[ed] almost word-for-word."  504 F.3d at
1139–40 (relying on *Vigman*).  We do so as well.**[6]**

This result is also consistent with settled principles of
statutory construction.    The Commodity Exchange Act
provides that "[p]rocess in such action may be served in any
judicial district of which the defendant is an inhabitant or
wherever the defendant may be found."  7 U.S.C. § 25(c).
The defendants contend that the words "such action"
incorporate by reference the venue requirement in the
preceding sentence.  We disagree.

"The word 'such' usually refers to something that has
already been 'described' or that is 'implied or intelligible
from the context or circumstances.'"  *Slack Techs., LLC v.
Pirani*, 598 U.S. 759, 766 (2023) (citing *Concise Oxford
Dictionary of Current English* 1218 (1931) and *Webster's
New International Dictionary* 2518 (2d ed. 1954)).  When
the word "'such' precedes a noun it refers to a particular
antecedent noun and any dependent adjective or adjectival
clauses modifying that noun, but not to any other part of the
preceding clause or sentence."  2A Norman J. Singer &
Shambie Singer, *Sutherland Statutory Construction* § 47:33
n.1 (7th ed. 2023 update).  Read according to these usual
syntax rules, the words "such action" refer to the only
"action" mentioned before the service of process
provision—"[a]ny action brought under subsection (a) of

---

[6] CMC cites out-of-circuit cases concerning statutes other than the
Commodity Exchange Act that disagree with our decisions. *See, e.g.*,
*KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 730 (7th
Cir. 2013); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d
Cir. 2005); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d
1343, 1351 (D.C. Cir. 2000); *but see In re Auto. Refinishing Paint
Antitrust Litig.*, 358 F.3d 288, 296–97 (3d Cir. 2004).  We are, of course,
bound by our precedents.

this section." 7 U.S.C. § 25(c). The rest of the venue provision explains where that action "may be brought," *id.*, but does not change the general description of the action covered by the subsection.

Treating the Commodity Exchange Act's venue and service of process provisions independently also serves the broad purposes of that Act. *See Go–Video*, 885 F.2d at 1412–13 (interpreting a long-arm provision in light of the statute's overall purpose). The Act aims

> to deter and prevent price manipulation or any other disruptions to market integrity; to ensure the financial integrity of all transactions subject to this chapter and the avoidance of systemic risk; to protect all market participants from fraudulent or other abusive sales practices and misuses of customer assets.

7 U.S.C. § 5. Allowing plaintiffs to establish personal jurisdiction separately from the statute's venue provision facilitates their ability to enforce the protections of the Act with regard to "*all* transactions subject to this chapter" and "*all* market participants." *Id.* (emphasis added).

Consistent with the intended sweep of the Act, Congress amended the Act's service of process and venue provisions in 1992 to make it easier for plaintiffs to bring private rights of action. Before that amendment, the Act was "silent as to service of process." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 106 (1987). The Supreme Court held in *Omni Capital* that a nationwide service of process authorization "was not implicit" in the Act, *id.* at 106–08, so

the district court lacked personal jurisdiction over the private plaintiffs, *id*. at 111.

Congress then amended the Act, in 1992. *See* Pub. L. No. 102-546, § 211, 106 Stat. 3590, 3607–08 (1992). A report by the House of Representatives Committee on Agriculture explained the amendment as follows:

> The Commission pointed out that the inability of certain plaintiffs to bring suit under the Commodity Exchange Act was restricted by the Act's narrow authorization for service of process and venue in such actions. The Commission advocated, and . . . the bill provides for, an amendment to section 22 of the Act to provide for nationwide service of process and expanded venue provisions for private rights of action brought under the Act.

H.R. Rep. No. 102-6, at 23 (Mar. 1, 1991).

Notably, the House committee report states that the amendment provides for "nationwide service of process *and* expanded venue provisions," *id*. (emphasis added)—not for nationwide service only if venue is first established. Similarly, neither the House conference report nor the Senate committee report provides any indication that Congress intended the nationwide service of process provision to be dependent on the narrower venue provision. *See* H.R. Conf. Rep. No. 102-978 (Oct. 2, 1992), 1992 U.S.C.C.A.N. 3179, 3192; S. Rep. No. 102-22 (Mar. 12, 1991), 1992 U.S.C.C.A.N. 3103, 3118.

CMC contends that if the nationwide service of process provision is independent of venue, the Act's venue provision is superfluous. Not so. The service of process provision authorizes service where the defendant is an inhabitant or is found. *See* 7 U.S.C. § 25(c). But the venue provision allows suit to be filed in other locations as well, including "in the judicial district wherein any act or transaction constituting the violation occurs." *Id*. For example, a suit could be filed where the violation occurred, and the defendant could be served in another location so long as the defendant is found there. That is, service of process and venue need not be in the same location. *See, e.g., Bourassa v. Desrochers*, 938 F.2d 1056, 1057–58 (9th Cir. 1991) (holding that service was proper in Florida under the nationwide service provision of the Securities Exchange Act of 1934 while venue was proper in California under the venue provision).

CMC also argues that the 2011 Venue Clarification Act forecloses the approach taken in *Go–Video*—which, as discussed, held that the alien venue provision in then-28 U.S.C. § 1391(d) could supplement a special venue provision—with the upshot that the venue provision of 7 U.S.C. § 25(c) is now the exclusive means for establishing venue in Commodity Exchange Act actions.[7] But the only issue before us in this appeal is personal jurisdiction, not

---

[7] The Venue Clarification Act established a uniform definition of residency for "all venue purposes." 28 U.S.C. § 1391(c). Under that definition, a domestic corporate defendant now "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). CMC contends that, if applicable to *venue* determinations in Commodity Exchange Act actions, the broadened residency definition in section 1391(c)(2) could permit nationwide venue.

venue. And CMC has pointed to nothing in 28 U.S.C. § 1391, as amended by the Venue Clarification Act, that would impact our interpretation of the service of process provision in 7 U.S.C. § 25(c).**[8]** We therefore leave for another day whether, and if so how, the 2011 Venue Clarification Act affects the determination of venue in Commodity Exchange Act cases.

In sum, we hold that the Commodity Exchange Act authorizes nationwide service of process regardless of where venue would lie under 7 U.S.C. § 25(c). The district court erred in holding that to establish personal jurisdiction in Arizona under the Act, the plaintiff first had to show that CMC could establish venue in Arizona under the Act's venue provision.

## B. Constitutional Analysis: Minimum Contacts with the United States

We next consider whether each defendant has sufficient minimum contacts with the United States to satisfy due process. *See Action Embroidery*, 368 F.3d at 1180. "In a statute providing for nationwide service of process, the inquiry to determine 'minimum contacts' is . . . 'whether the defendant has acted within any district of the United States or sufficiently caused foreseeable consequences in this country.'" *Id*. (quoting *Vigman*, 764 F.2d at 1316); *see also Warfield v. Alaniz*, 569 F.3d 1015, 1028–29 (9th Cir. 2009).

---

[8] Although the defendants each moved in the district court to dismiss for lack of personal jurisdiction, none sought dismissal based on improper venue. *See* Fed. R. Civ. P. 12(b)(3), (h)(1); *King v. Russell*, 963 F.2d 1301, 1305 (9th Cir. 1992). So the district court never had occasion to address whether venue can be established if there is personal jurisdiction. Further, as CMC acknowledged at oral argument, the defendants have not in this appeal raised venue independently of personal jurisdiction.

### 1.  The U.S. Defendants

Neither Binance.US nor CoinMarketCap contends that it lacks minimum contacts with the United States. Appropriately so.  General jurisdiction "extends to 'any and all claims' brought against a defendant."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)).  A "court may exercise general jurisdiction" over a defendant who is "essentially at home" in the forum.  *Id*. (quoting *Goodyear*, 564 U.S. at 919).  For a corporation, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (alterations in original) (internal quotation marks omitted); *see also Ford*, 592 U.S. at 358–59.

Binance.US is a Delaware corporation with its principal place of business in either California or Florida. CoinMarketCap is a Delaware limited liability company headquartered in Delaware.  Given that each company is incorporated or has a principal place of business in the United States, each has sufficient contacts with the United States to satisfy due process.  *See Action Embroidery*, 368 F.3d at 1180.

We therefore reverse the district court's holding that it lacked personal jurisdiction over Binance.US and CoinMarketCap.

### 2.  The Foreign Defendants

Binance Capital and the individual officers contend that the complaint does not allege they have sufficient minimum contacts with the United States to be subject to general jurisdiction.  We agree.

The complaint alleges that Binance Capital was founded in China and has no publicly identified headquarters; it does not allege that Binance Capital has a place of business in the United States.

Because Binance Capital (like the individual officers) is not alleged to be "at home" in the United States, *see Ford*, 592 U.S. at 358, the question is whether its case-specific contacts with the United States provide a constitutionally sufficient basis for specific jurisdiction, *see id.* at 359–60. For exercise of personal jurisdiction to comport with due process, the defendant must have "'certain minimum contacts' with the relevant forum"—here, the United States—"such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Ross*, 504 F.3d at 1138 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc)). In determining whether the defendant has the requisite contacts for specific personal jurisdiction, we consider "the defendant's purposeful conduct towards the forum, the relation between his conduct and the cause of action asserted against him, and the reasonableness of the exercise of jurisdiction." *Id.*; *see also, e.g.*, *Ford*, 592 U.S. at 358–60.

Cox argues that Binance Capital "has regularly and intentionally engaged in online cryptocurrency transactions with United States residents and has also promoted inside the United States the sale of digital assets on its exchange." The complaint alleges, however, that "[i]n 2019, Binance was banned in the United States on regulatory grounds and stopped accepting US users that year." Cox does not allege that Binance is violating the ban.

The complaint also alleges that CoinMarketCap.com users who click a "buy" button are directed to "Binance's website[]." But the complaint later explains that when U.S. users attempt to visit "the website Binance.com," it "takes US users [to] Binance.US's website." Based on these allegations, Binance Capital's own activities do not establish minimum contacts with the United States.

Cox next argues that Binance Capital "is the world's largest cryptocurrency exchange and *through* [Binance.US] and CoinMarketCap, provides those services to customers in Arizona and throughout the United States." He alleges that Binance Capital partnered with Binance.US to launch a new U.S cryptocurrency exchange; Binance Capital provided some technologies to the new Binance.US exchange; and, due to references on Binance.US's website to the "Binance" brand, "it is not clear . . . whether there is any meaningful distinction between the two." Cox thus appears to suggest that Binance.US's contacts with the United States should be attributed to Binance Capital, its parent company.

But the fact that a parent company is "closely associated" with a subsidiary that itself has minimum contacts is insufficient to establish personal jurisdiction. *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019). "As a general principle, corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015). Cox's general reliance on Binance Capital's association with Binance.US therefore fails.

Imputation of a subsidiary's minimum contacts to a parent company requires satisfaction of the "alter ego" test, which obligates a party to make out "a prima facie case

(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Id*. at 1073 (alterations in original) (internal quotation marks omitted). The district court rejected Cox's argument that Binance Capital is the alter ego of Binance.US. On appeal, Cox does not argue that Binance Capital is an alter ego of Binance.US or that their relationship satisfies the alter ego test,[9] and so has forfeited reliance on an alter ego theory to establish minimum United States contacts for Binance Capital.[10]

We conclude that Binance Capital lacks sufficient minimum contacts with the United States.

Cox did not allege that individual defendants Zhao, He, and Lin, officers of Binance Capital, had minimum contacts with the United States. Instead, Cox contends that Binance Capital's contacts should be imputed to the officers based on an alter ego theory. That argument fails because Cox has not established that Binance Capital has minimum contacts with the United States.

Further, the district court did not abuse its discretion in dismissing the complaint against the foreign defendants without leave to amend. At argument, counsel for Cox stated that there are no new facts he could add to the complaint bearing on the contacts of Binance Capital and the individual officers with the United States. A "district court does not

---

[9] Nor does Cox contend that Binance Capital's relationship with CoinMarketCap would satisfy the alter ego test.

[10] We therefore do not consider whether Binance.US's activities in the United States, if attributed to Binance Capital, would be sufficient in this case to establish specific jurisdiction over Binance Capital.

abuse its discretion in denying a motion to amend a complaint . . . when the movant presented no new facts but only new theories and provided no satisfactory explanation for his failure to fully develop his contentions originally." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004) (alteration in original) (internal quotation marks omitted). Accordingly, the district court correctly dismissed the complaint against Binance Capital, Zhao, He, and Lin for lack of personal jurisdiction.

The district court erred, however, in dismissing the case against the foreign defendants *with* prejudice. A dismissal for lack of personal jurisdiction does not adjudicate the merits and so should be without prejudice. *See Grigsby v. CMI Corp.*, 765 F.2d 1369, 1372 n.5 (9th Cir. 1985); *Kendall v. Overseas Dev. Corp.*, 700 F.2d 536, 539 (9th Cir. 1983); *Thomas v. Furness Pac. Ltd.*, 171 F.2d 434, 435 (9th Cir. 1948).

In sum, we affirm the district court's dismissal as to the foreign defendants, but vacate the district court's dismissal order and remand with instructions to dismiss the complaint against them without prejudice.

## C. Whether Cox Has Asserted a Colorable Claim Against CoinMarketCap and Binance.US for Purposes of Personal Jurisdiction Under the Commodity Exchange Act

CoinMarketCap and Binance.US assert that Cox cannot invoke the nationwide service of process provision of the Commodity Exchange Act because his statutory claim is not colorable. We disagree.

Satisfaction of the elements of a claim for relief is "not a jurisdictional issue" absent a "clear[]" indication in the

statute's jurisdictional language. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006). Instead, a complaint may only "be dismissed for want of jurisdiction where the alleged claim under the . . . federal statute[] clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83 (1946); *see also, e.g.*, *Shapiro v. McManus*, 577 U.S. 39, 45 (2015) (equating an insubstantial or frivolous claim for jurisdictional purposes to one that is "essentially fictitious"). The fact that a claim may be "of doubtful or questionable merit," without more, does not render it "insubstantial" for purposes of establishing jurisdiction. *Hagans v. Lavine*, 415 U.S. 528, 538 (1974). The plaintiff need only make "a colorable showing that [the defendant] *might* be liable" under that statute. *San Mateo Cnty. Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d 1356, 1358 (9th Cir. 1992) (emphasis added).

The parties agree that to state a price manipulation claim under the Commodities Exchange Act, 7 U.S.C. §§ 9(1), 9(3), 13(a)(1), Cox must allege that (1) the defendant possessed an ability to influence market prices, (2) an artificial price existed, (3) the defendant caused the artificial price, and (4) the defendant specifically intended to cause the artificial price. *See In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 173, 183 (2d Cir. 2013); *Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 247 (5th Cir. 2010); *Frey v. Commodity Futures Trading Comm'n*, 931 F.2d 1171, 1177–78 (7th Cir. 1991); *BMA LLC v. HDR Glob. Trading Ltd.*, No. 20-CV-03345-WHO, 2021 WL 949371, at *13 (N.D. Cal. Mar. 12, 2021). Under that standard, Cox's claims for price manipulation under the Commodity Exchange Act are colorable.

Price manipulation is "conduct [that] has been intentionally engaged in which has resulted in a price which does not reflect basic forces of supply and demand." *Cargill, Inc. v. Hardin*, 452 F.2d 1154, 1163 (8th Cir. 1971). Cox alleges that CoinMarketCap manipulated the price of HEX, a commodity, by artificially depressing its ranking, causing it to drop from a top 20 ranking to a 201st ranking on CoinMarketCap's website. His theory is that by manipulating HEX's ranking on the CoinMarketCap website, CoinMarketCap caused visitors to its popular website to be less likely to purchase HEX and thereby suppressed its value. As a result, Cox alleges, the price of HEX was artificially depressed. Cox maintains that Binance.US was aware of problems with CoinMarketCap's rankings and participated in the manipulation of HEX's price by encouraging potential buyers of cryptocurrency "to rely on CoinMarketCap.com's information when making investment decisions."

Based on his complaint, Cox *might* be able to make out a claim under the Commodity Exchange Act. It is possible that providing or helping to provide false information about a popular cryptocurrency from an authoritative information source could influence potential buyers or sellers of that cryptocurrency to such an extent that it would impact pricing. Although CoinMarketCap and Binance.US raise questions about whether Cox's allegations can satisfy the elements of a Commodity Exchange Act claim, his allegations are not wholly insubstantial or frivolous.

Regardless of whether Cox's allegations ultimately satisfy the elements of the claim, they provide a sufficient basis upon which to assert personal jurisdiction over CoinMarketCap and Binance.US under the Commodity Exchange Act. We express no opinion on whether his

complaint plausibly states claims upon which relief may be granted. That question is for the district court to determine on remand.

## III. Conclusion

We reverse the district court's determination that it lacked personal jurisdiction over CoinMarketCap and Binance.US and remand for further proceedings consistent with this opinion. We affirm the district court's determination that the court lacked personal jurisdiction over Binance Capital, Zhao, He, and Lin, but vacate the dismissal against them "with prejudice," and remand with instructions to dismiss the complaint against them without prejudice.

**AFFIRMED IN PART, REVERSED IN PART, VACATED AND REMANDED.**